658 P.2d 243

**STATE of Arizona, Appellant,**

v.

**Michael Arthur GALAN, Appellee.**

**No. 1 CA–CR 5825.**

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 18, 1982.

Rehearing Denied Dec. 27, 1982.

Review Denied Jan. 25, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Michael K. Carroll, Asst. Atty. Gen., Phoenix, for appellant.

Debus, Bradford & Kazan, Ltd. by Larry L. Debus, Lawrence I. Kazan, Phoenix, for appellee.

## OPINION

KLEINSCHMIDT, Judge.

The state appeals from an order of the trial court dismissing an indictment charging the defendant, Michael Galan, with three counts of attempted trafficking in stolen property. The sole issue presented is whether attempted trafficking in stolen property is a cognizable offense under Arizona law. We hold that it is and we set aside the order of the trial court dismissing the indictment.

The evidence on which the indictment was based, taken from the transcript of proceedings before the grand jury, reveals that in January of 1981 an undercover police officer assigned to an anti-fencing task force contacted the defendant Galan at his place of business, Arizona Scrap Iron and Metal, and offered to sell the defendant 245 pounds of copper wire. The officer told Galan that he had a key to a Mountain Bell Telephone Company yard and that he could "rip" as much wire as he could get out. Galan told the officer that he would strip the wire so that it could not be identified and he purchased the wire for $50.

Approximately two months later the same officer contacted Galan and sold him 120 pounds of copper wire for $82, again telling him that he, the officer, had "ripped it off" from Mountain Bell. Galan indicated that he would be shipping the wire out the next day.

Two days later the officer again sold Galan 105 pounds of wire for $73, telling him that the wire was "not right". Galan said that he would not let the wire be seen and that he would get rid of it the next day.

None of the wire sold to the defendant had in fact been stolen. Rather, it had been donated to the task force by Mountain Bell Telephone Company for use in connection with the task force's enforcement program.

The defendant contends that under our statutory scheme an attempt requires proof that the accused engaged in conduct with the specific intent to commit a specific criminal offense. Since trafficking in stolen property requires only that one act recklessly, it follows, he says, that no offense was committed because one cannot intentionally act recklessly. We reject the defendant's position because we feel that its apparent logic is flawed and because it leads to a result contrary to the legislative intent behind the statutory scheme relating

to property offenses. We begin with an examination of the purpose of the statutory scheme.

The current criminal code, which became effective in 1978, replaced the various statutory and common law concepts of "mens rea" with four specifically defined culpable mental states. Those four culpable mental states are (1) intentionally, (2) knowingly, (3) recklessly, and (4) with criminal negligence. A.R.S. § 13–105. They are employed throughout the code to the exclusion of all other terms dealing with the state of mind which must accompany a specific act or acts to constitute a crime. Arizona Criminal Code Commission, Arizona Revised Criminal Code, § 201 commentary at p. 39 (1975).

Another of the codifiers' clear purposes was to preclude the common law defense of ·impossibility, thus shifting the focus from judging conduct in light of the actual facts to a consideration of the defendant's "dangerousness". *See* Model Penal Code, § 5.01(1) at p. 31 (Tent. Draft No. 10, 1960) and R.J. Gerber, *Criminal Law of Arizona,* § 13–1001 at p. 132 (1978). This was accomplished by a redefinition of "attempt". In pertinent part A.R.S. § 13–1001 provides:

> A. A person commits attempt if, acting with the kind of culpability otherwise required for the commission of an offense, such person:
>
> (1) Intentionally engages in conduct which would constitute an offense if the attendant circumstances were as such person believes them to be; or
>
> (2) Intentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense
> . . . .

Subsection A(1) thus imposes liability where the completed offense is rendered impossible for any reason and § A(2) impos-

es liability for any step in a course of criminal conduct. Judge Gerber writes that A.R.S. § 13–1001 was intended to replace both the general and the specific attempt provisions in the prior Title 13. R.J. Gerber, *supra,* at 132–33.

We next turn to a consideration of the trafficking statute, A.R.S. § 13–2307(A) which provides:

> A person who recklessly traffics in the property of another that has been stolen is guilty of trafficking in stolen property in the second degree.

"Traffic" is defined in A.R.S. § 13–2301(B)(3) as follows:

> 'Traffic' means to sell, transfer, distribute, dispense or otherwise dispose of stolen property to another person, or to buy, receive, possess or obtain control of stolen property, with *intent* to sell, transfer, distribute, dispense or otherwise dispose of to another person. (Emphasis added.)

There are several reasons why we conclude that one can attempt to "recklessly" traffic in stolen property.

The defendant's argument that an attempt still requires a specific intent which is incompatible with a reckless state of mind does not reckon with all of the language of A.R.S. § 13–1001, the attempt statute. We quote that provision again with emphasis on the wording that the defendant's argument ignores: [1]

> A person commits attempt if, *acting with the kind of culpability otherwise required for the commission of an offense* such person,
>
> (1) Intentionally engages in conduct which would constitute an offense if the attendant circumstances were as such person believes them to be.

A common sense reading of the provision leads to the conclusion that the words "intentionally engages in conduct" refers, in this case, to the actions that make up trafficking like buying property intending to

---

1. The indictment refers simply to a violation of A.R.S. § 13–1001 without specifying whether it was brought under Subparagraph (A)(1) or Subparagraph (A)(2). Both the wording of the indictment and what the record shows regarding the allegations lead to the conclusion that Subparagraph (A)(1) is the more appropriate charging provision.

resell it (A.R.S. § 13–2301(B)(3)) and that the words "acting with the kind of culpability otherwise required for the commission of an offense" requires only that the acts be accompanied by a reckless state of mind as to the circumstances attending the status of the property. A contrary conclusion would mean that the words "acting with the kind of culpability otherwise required for the commission of an offense" are superfluous. This would run contrary to the rule that each phrase and clause of a statute must be given meaning so that no part will be void, inert, redundant, or trivial. *Terry v. Lincscott Hotel Corp.,* 126 Ariz. 548, 617 P.2d 56 (App.1980).

This conclusion is directly supported by the comments to the American Law Institute's Model Penal Code which, in discussing a proposed definition of attempt that was in every material respect like the language of A.R.S. § 13–1001(A)(1) said:

*The Requirement of Purpose.* As previously stated, the proposed definition of attempt follows the conventional pattern of limiting this inchoate crime to purposive conduct. In the language of the courts, there must be 'intent in fact' or 'specific intent' to commit the crime allegedly attempted. (Footnote omitted.) Nonetheless a problem of drafting is presented in endeavoring to explain the nature of the requisite purpose.

This section adopts the view that the actor must have for his purpose to engage in the criminal conduct or accomplish the criminal result which is an element of the substantive crime but that his purpose need not encompass all the surrounding circumstances included in the formal definition of the substantive offense. As to them, it is sufficient that he acts with the culpability that is required for commission of the crime. Suppose, for example, that it is a federal offense to kill or injure an FBI agent and that recklessness or even negligence with respect to the identity of the victim as an agent suffices for commission of the crime. There would be an attempt to kill or injure such an agent under the present formulation if the actor with recklessness or negligence as to the official position of the victim attempts to kill or injure him. Under paragraph (b) the killing or injuring would be the required purpose [or intent]; the fact that the victim is an agent would be only a circumstance as to which the actor had 'the kind of culpability otherwise required for commission of the crime.'

It is difficult to say what the result would be in this kind of case under prevailing principles of attempt liability. However, the proposed formulation imposes attempt liability in a group of cases where the normal basis of such liability is present—purposive [intentional] conduct manifesting dangerousness—and allows the policy of the substantive crime, respecting recklessness or negligence as to surrounding circumstances, to be applied to the attempt to commit that crime.

Model Penal Code, § 5.01(1) at p 27 (Tent. Draft No. 10, 1960).

We see a direct analogy between recklessness with respect to the status of a victim and recklessness with respect to the status of property.

The defendant has cited a number of cases from other jurisdictions which stand for the proposition that under statutes worded like the Arizona law attempted homicide by reckless conduct is not a cognizable offense.[2] Typical of these and one which construes an attempt statute very like our own is *Rhode v. State,* 391 N.E.2d 666 (Ind.App.1979), wherein the defendant contended that attempted reckless homicide was a non-existent crime. The Indiana attempt statute, IC 1971, 35–41–5–1 (Burns Code Ed., Repl.1979), provided:

[2] The cases cited, in addition to *Rhode v. State* and *State v. Smith* which are cited and discussed in the text, are: *State v. Zupetz,* 322 N.W.2d 730 (Minn.1982); *Zickefoose v. State,* 388 N.E.2d 507 (Ind.1979); *People v. Harris,* 72 Ill.2d 16, 17 Ill.Dec. 838, 377 N.E.2d 28 (1978); *People v. Trinkle,* 68 Ill.2d 198, 12 Ill.Dec. 181, 369 N.E.2d 888 (1977); *People v. Viser,* 62 Ill.2d 568, 343 N.E.2d 903 (1975), and *State v. Melvin,* 49 Wis.2d 246, 181 N.W.2d 490 (1970).

(a) A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime....

"Recklessly" was defined under IC 1971, 35–41–2–2 (Burns Code Ed., Repl.1979) as follows:

(c) A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard of harm involves a substantial deviation from acceptable standards of conduct....

The court concluded that the Indiana legislature had not removed the element of specific intent when it drafted the attempt statute, that homicide by reckless conduct does not require an intent to attain a result which if accomplished would constitute a crime, and that one cannot attempt a crime which only requires reckless conduct.

We express no opinion as to whether attempted negligent second degree murder, reckless manslaughter, or negligent homicide are cognizable offenses under Arizona law. We do see some distinctions between attempted trafficking and the attempted homicide cases. The homicide cases do not construe that portion of an attempt statute whose sole purpose is to negate the defense of impossibility. Our case is one in which the defendant allegedly intentionally did acts and did them with a reckless state of mind as to the status of property. It is not a true preparatory crime but a completed one which the legislature has simply chosen to define as an attempt when the property is not actually stolen. Looking at the same idea from another angle we note that the defendant's brief picks up the language of some of the homicide cases to the effect that one cannot intend to do an act recklessly. Since it is obvious that one can quite literally intend to do an act recklessly we interpret the phrase as an attempt to express the idea that "there is no such criminal offense as an attempt to achieve an unintended result." *People v. Harris,* 72 Ill.2d 16, 17 Ill.Dec. 838, 841, 377 N.E.2d 28, 31 (1978). That is perfectly true and it highlights the distinction we make. In the crime with which we deal the intended result has been achieved—the property has been bought for resale. That is not the same as the homicide cases where the intended act is a death accomplished which fell short for reasons having nothing to do with the defense of impossibility.

There is a final point which persuades us that the attempted homicide cases are not determinative. It is best understood by an examination of the ruling in *State v. Smith,* 21 Or.App. 270, 534 P.2d 1180 (1975). The Supreme Court of Oregon held that there was no such crime as attempted murder based upon the act of intentionally engaging in conduct which recklessly placed the life of another in danger. The court did say that there can be no attempt to act recklessly but went on to add that it was necessary to examine the entire statutory scheme to resolve the issue. It concluded that the defendant's reckless conduct in that case was amply proscribed by three different assault statutes that varied in degree of seriousness depending on how the act was committed and what the results of it were. For this reason the Oregon court found, in the context of homicides and assaults, that the legislative scheme was consistent with the approach that one cannot attempt to act recklessly. A review of our own code relating to property offenses reveals no such alternative provisions that would cover the trafficking conduct our legislature clearly intended to forbid. To accept the defendant's argument would in effect reinstate the defense of impossibility as to all crimes but those required to be done "intentionally". The legislature surely did not intend this.

The order of the trial court dismissing the indictment is reversed and set aside and this matter is remanded to the trial court for further proceedings.

OGG, P.J., and CORCORAN, J., concur.