435 So.2d 1047 (1983)
STATE of Louisiana
v.
Lionel WILLIAMS.
No. 83-KA-329.
Court of Appeal of Louisiana, Fifth Circuit.
June 6, 1983.
Writ Denied September 30, 1983.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., New Orleans, Harry J. Morel, Jr., Dist. Atty., Twenty-Ninth Judicial Dist., Hahnville, John M. Crum, Asst. Dist. Atty., Twenty-Ninth Judicial Dist., Edgard, Gregory C. Champagne, Asst. Dist. Atty., Twenty-Ninth Judicial Dist., Hahnville, for State of La., appellee.
Robert R. Faucheux, Jr., Reserve, for Lionel Williams, appellant.
Before CHEHARDY, BOWES and DUFRESNE, JJ.
CHEHARDY, Judge.
Lionel Williams was charged in a bill of information with two counts of attempted murder. After a trial by jury he was found guilty of one count and sentenced to 100 years at hard labor under the habitual offender provisions of the law. In this appeal he relies on five assignments of error.
According to the record, at about 3:15 p.m. on January 27, 1982 the St. John Parish Sheriff's Office was notified by Shane LeBoeuf, a barmaid at Sue's Lounge in Reserve, Louisiana, that a suspicious character was in the bar attempting to secure ammunition for his gun.
Deputies were dispatched to investigate and plain clothes officers Burton Ory and Ronald Arceneaux were among the first to arrive. The description of the suspect matched that of a person they were seeking who had been involved in a shoot-out in New Orleans a day or so earlier. They saw the suspect (later identified as Williams) in the bar, identified themselves as police officers, and asked him to step outside to talk.
*1048 He refused and pulled a gun out of a shoulder bag, and pointed it at Captain Ory. According to the state witnesses he fired one shot at Ory but missed. (Defendant denies he fired a shot at this time.) Ory fell to the floor, taking evasive action as soon as he saw the gun, and Arceneaux, having heard a shot, returned the fire, striking the barmaid in the legs.
The customers and the officers evacuated the building while Williams grabbed the barmaid as a hostage, holding a gun at her head. Williams admits firing a shot above a doorway after the people left the building. He claims this is the only shot he fired. Three hours later hostage negotiators persuaded him to leave the building and release Mrs. LeBoeuf. He was then arrested.
In the bill of information he was charged with violation of R.S. 14:27 and 14:30, attempted murder of Captain Burton Ory and Detective Ronald Arceneaux. He was found innocent as to Arceneaux and guilty as to Ory.
Attempt is defined by R.S. 14:27(A) as follows:
"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."
R.S. 14:30(2) calls for "specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties * * *."

ASSIGNMENT No. 1
Appellant contends the trial court erred in repeatedly defining first degree murder (R.S. 14:30) singling out that charge, and not including other charges, crimes and definitions included in R.S. 14 Part II Subpart A.
Defendant claims to have been prejudiced because during the judge's charge to the jury he did not include a complete recitation of responsive verdicts each and every time he defined first degree murder. Defendant claims the first degree murder charge took on a priority meaning and that a full and complete recitation of responsive verdict procedures was clearly indicated because of the nature of the crime.
C.Cr.P. art. 814(A)(2) cites responsive verdicts to first degree murder. The trial court defined attempt and then gave a definition of first degree murder coupled with the appropriate paragraph relative to firemen and police officers, followed by a recital of responsive verdicts, but not including negligent homicide.
No objection to the jury charges was noted in the record.
After the jury retired for deliberation they requested again the definition of first degree murder. In answer to that inquiry, the judge instructed the jury as to the definition of attempt, along with that of first degree murder.
Again no objection was made by defendant.
It is well established that any irregularity or error at the trial cannot be availed after the verdict, unless defendant timely made known his objections and the grounds therefor. State ex rel. Ross v. Blackburn, 403 So.2d 719 (La.1981); State v. Motton, 395 So.2d 1337 (La.1981). Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR No. 2
Defendant claims a sentence of 100 years constitutes cruel and unusual punishment.
R.S. 14:27(D)(1) provides if the offense attempted is punishable by death or life imprisonment the defendant shall be imprisoned at hard labor for not more than 50 years. Defendant was sentenced pursuant to the habitual offender statute, R.S. 15:529.1, and as such was given the maximum sentence authorized by that statute.
Defendant contends the judge should not have given the maximum sentence because defendant was found guilty of only one count, based upon minimal evidence.
*1049 Defendant himself testified at the trial. He admitted pleading guilty previously to a charge of burglary and confirmed that criminal charges are currently pending against him in Iberville Parish, which he declined to discuss. He denied any intent to harm anyone in the instant case.
The court imposed the maximum sentence, finding that defendant fired his gun at a police officer in a crowded public establishment and in so doing completely disregarded the safety of not only the intended victim but also other bar patrons.
Additionally the judge noted defendant admitted fleeing police officers in New Orleans who were conducting a raid to confiscate illegal drugs and that he had been shot the day before when he fled the scene of the New Orleans crime with police officers in pursuit.
The court considered defendant a dangerous felon who would exhaust any means to avoid legal apprehension, including taking a civilian hostage in an attempt to bargain for his freedom.
The trial judge clearly had the authority to sentence the defendant to 50 years under the original crime if he found it warranted, and to sentence him to a 100-year term under the habitual offender statute. R.S. 15:529.1(A)(1).
Common sense dictates that no sentence is effective beyond one's lifetime and any argument that the maximum sentence should not have been for more than defendant's lifetime is without basis in law or common sense.
This assignment relative to the imposed sentence is without merit.

ASSIGNMENT OF ERROR No. 3
Defendant contends it was error for the trial court not to allow or direct a responsive verdict sheet to be considered by the jury in its deliberations.
The charge of negligent homicide was left off the sheet used by the jurors. Inasmuch as this is a responsive verdict to first degree murder, defendant claims it was detrimental that a definition of this offense was not included in the verdict sheet.
Defendant made no objection to this alleged omission at the trial and no evidence was offered relative to negligent homicide. We also note that in defendant attorney's summation to the jury he did not allude to that offense.
State v. Toomer, 395 So.2d 1320 (La.1981), deals with a similar assignment of error. It held that since no evidence had been introduced from which the jury could have inferred these crimes (criminal negligence or criminal homicide) there was no error.
Furthermore defendant in the instant case was not charged with murder, but attempted murder. Thus "attempted negligent homicide" would be the appropriate responsive verdict. However, "attempted negligence" is contradictory in and of itself.
Thus Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR No. 4
Defendant contends it was error for the trial court to accept a verdict not responsive to the evidence, or alternatively the jury did not properly address the evidence presented.
The standard to be used in reviewing the sufficiency of evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any trier of fact could have found beyond a reasonable doubt that the defendant was guilty. State v. Korman, 397 So.2d 1346 (La.1981), and cases cited therein.
It is appellant's position that the evidence revealed that at no time did defendant intend to physically harm Captain Ory, nor was any evidence shown that defendant was ever attempting to harm anyone at the lounge on January 27, 1982.
The jury obviously concluded otherwise.
Their verdict was based on the testimony of numerous eyewitnesses and Williams who took the stand to testify in his own behalf. All of the eyewitnesses saw Williams pull the gun out of the shoulder bag and aim it directly at Ory. Williams claims he was only doing it so as not to be accused of having a concealed weapon.
*1050 It is evident pandemonium resulted and everyone scurried to get out of the way. Ory fell to the floor and Mrs. LeBoeuf heard a shot as she ran. She looked around to see Arceneaux withdraw his gun from the holster and return the fire. It was his bullet that hit her legs. She stated unequivocally that she heard two shots, and no other gun was drawn at the time of the first shot, because Arceneaux's gun was not fully withdrawn when she turned around.
Arceneaux also claims Williams fired first; he thought Ory was hit as he fell to the floor. Detective Edward Rome concurred that he heard two shots fired simultaneously and a third shot a few minutes later, as did Robert Cambre, a customer. Everyone heard the single shot fired after the building had been evacuated.
The physical evidence indicates the gun could hold six shells, but only one was spent (fired) and two live shells remained. Defendant claimed he could not have fired at either officer, as only one spent cartridge was recovered and that was found above the doorway.
However the evidence established that the building contained 25 bullet holes (many obviously from previous incidents) and it had been swept clean before the investigation so any other spent casings on the floor would not have been found.
The record also established that defendant seized the waitress by the neck, pointed a gun at her head and threatened to kill her, and held her hostage for three hours.
Defendant's actions belie the fact that he had no intent to harm anyone. The jury clearly believed defendant attempted to murder Captain Ory but not Detective Arceneaux.
Applying the test presented in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and further developed in State v. Austin, 399 So.2d 158 (La.1981), this court must determine whether any reasonable trier of fact could have found the defendant guilty of attempted first degree murder of Captain Ory by accepting the facts or evidence most favorable to the prosecution.
In accordance with the definitions supplied by R.S. 14:27, 14:30 and the evidence presented in support thereof there is no reason to disprove those findings.
Accordingly, Assignment of Error No. 4, after careful consideration, is found to be without merit.

ASSIGNMENT OF ERROR No. 5
Appellant complains that excessive delay in the rendition of judgment is a violation of his right to a speedy trial guaranteed by the Sixth Amendment of the United States Constitution.
The trial took place on October 18 and 19, 1982. The jury rendered its verdict shortly after all of the evidence was presented on October 19, 1982. Sentencing occurred on October 25, 1982. It was not until January 25, 1983 that written reasons were entered in the record.
C.Cr.P. art. 894.1(C) provides that the trial court shall state for the record the considerations taken into account and the factual basis for imposing sentence. This is an important aid to this court when we are called upon to review a sentence complained of.
Although the reasons should be handed down contemporaneously with the sentence, since they are a part of the record, it would serve no useful purpose to remand for that reason.

CONCLUSION
The finding of guilty and the subsequent sentencing conforms to the evidence and law, and the judgment and sentence are affirmed.
AFFIRMED.