745 P.2d 175

**STATE of Arizona, Appellee,**

v.

**Alfred Richard ADAMS, Appellant.**

**1 CA–CR 10000.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 27, 1987.

Review Denied Nov. 24, 1987.

---

and Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for appellant.

## OPINION

FROEB, Judge.

Appellant was charged with attempted first degree murder of his wife. Following a jury trial, he was convicted of attempted second-degree murder. The state had also alleged a prior dangerous offense. Appellant was sentenced to a presumptive term of 15.75 years, the presumptive term for conviction of a class 2 dangerous offense with a prior dangerous offense conviction.

The charges in this case were filed against the appellant following a shooting incident in which he shot his wife in the back outside of a pizza parlor where she worked. The appellant entered the pizza parlor, and handed his wife a note which stated she should leave with him or he would kill her. He also showed the victim that he had a pistol in his hand. They left the pizza parlor together and once outside, the victim knocked the appellant's arm from her and started to run away. There were several eyewitnesses to the shooting who testified that as the appellant's wife ran from him, he stated, "This one is for you, baby." He then appeared to point the weapon at his wife and fired a shot at her which struck her in the upper back.

The witnesses testified that after the first shot was fired, the victim ducked behind a pillar in front of the pizza parlor and appellant ran towards her while attempting to remove a shell from the pistol which had become jammed. Several of the witnesses also testified that appellant appeared to have full control of himself and did not appear to be intoxicated.

The witnesses also testified that they saw appellant go to where his wife was hiding behind the pillar and attempt to unjam the weapon. He continued to point the weapon at her. When several people attempted to approach the appellant, he pointed the gun at them and the victim, and

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div.

stated that he would kill them. Appellant initially denied shooting the victim, then later admitted that he had pointed his gun at her but claimed that he had not intended to shoot her. He also admitted that he had raised the gun and fired at his wife while she was running away from him and that the gun had then jammed.

On appeal, appellant argues:

1. He was entitled to instructions and forms of verdict as to the offenses of attempted manslaughter and attempted negligent homicide;

2. He was denied his right to cross-examine the witnesses;

3. The trial court erroneously considered his prior California conviction as a "dangerous" prior conviction.

## REFUSAL TO INSTRUCT ON ATTEMPTED MANSLAUGHTER AND ATTEMPTED NEGLIGENT HOMICIDE

▇ Relying on *State v. Galan*, 134 Ariz. 590, 658 P.2d 243 (App.1982), appellant argues that the trial court erred in refusing to instruct the jury on the alleged offenses of attempted manslaughter and attempted negligent homicide. Although recognizing that *Galan* left open the question of whether the offenses of attempted reckless manslaughter or attempted negligent homicide were cognizable offenses in Arizona, appellant argues that the trial court should have adopted the reasoning set forth in that opinion. The state argues, relying on *Rhode v. State*, 181 Ind.App. 265, 391 N.E.2d 666 (1979), that the crimes of attempted reckless homicide and attempted negligent homicide are nonexistent under the statutory scheme in Arizona.[1]

In *Rhode*, the state appealed, arguing that the offense of reckless homicide was cognizable under the statutes in Indiana. The court, citing R. Perkins, *Criminal Law* 573–74 (2d ed. 1969), noted that "an attempt to commit any crime requires a specific intent to commit that particular offense." *Rhode*, 181 Ind.App. at 267, 391

N.E.2d at 668. In addition, the court noted that their statutory language defining "attempt" and "recklessness," paralleled that contained in the American Law Institute's Model Penal Code § 5.01 (Tent. Draft No. 10, 1960). The comments following § 5.01 limited the crime of attempt to "purposive" conduct, and stated that an attempt required "intent in fact" or "specific intent" to commit the crime allegedly attempted. The Model Penal Code specifically declared "reckless conduct" to be outside the coverage of the attempt statute. *Rhode*, 181 Ind.App. at 267, 391 N.E.2d at 668.

Where it is clear that the legislative scheme intends to restrict an "attempt" statute to *intentional* conduct, as ours does in A.R.S. § 13–1001(A)(2), then there must be "intent in fact" or "specific intent" to commit the crime attempted. In *Rhode*, the court held that the reckless homicide statute did not require an intent to accomplish *a result* which would constitute a crime. The statute in *Rhode* provided in part: "A person who recklessly kills another human being commits reckless homicide, a class C felony." *Rhode*, 181 Ind.App. at 266, 391 N.E.2d at 667. That statute is essentially the same as A.R.S. § 13–1103(A)(1). The Indiana statutes also set out definitions of culpable mental states: intentional, knowing, and reckless. Reckless was defined as follows: "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." *Rhode*, 181 Ind.App. at 267, 391 N.E.2d at 667 (quoting Ind. Code § 35–41–2–2 (Burns 1971 & Supp.1979)). The mental state of "recklessness" was demonstrated in *Rhode* by the defendant's disregard for the harm that might result. That is essentially the same result under our statutes. *See* A.R.S. § 13–105(6)(c). The question then arises as to whether our attempt statute requires either "intent in

---

1. We note that the state originally submitted an instruction on attempted manslaughter, but only on the theory that the offense was a "heat of passion" crime. When the evidence failed to support that theory, the instruction was withdrawn. Therefore, we have no occasion to decide whether *that* offense exists in Arizona.

fact" or "specific intent." Our attempt statute states:

A. A person commits attempt if, acting with the kind of culpability otherwise required for commission of an offense, such person:

. . . .

2. Intentionally does ... anything which ... is any step in a course of conduct *planned* to culminate in commission of an offense....

A.R.S. § 13–1001 (emphasis added).

Clearly, the statute, like the Model Penal Code and the statute discussed in *Rhode*, requires the actor to engage in "purposive" conduct. The relevant portion of the attempt statute applies to a person who has planned the commission of an offense and intentionally takes any step toward accomplishing the commission of the offense. Planning to commit an offense, in this case a homicide, is clearly different from disregarding a substantial risk that a result is highly likely to occur. *See also State v. Melvin*, 49 Wis.2d 246, 249–50, 181 N.W.2d 490, 492 (1970) (there is no such crime as attempted homicide by reckless conduct).

In *Melvin*, the court held that in order to commit an "attempt" a defendant must have an intent to perform acts *and to achieve a result* which, if accomplished, would constitute the crime. The court concluded that recklessness did not require any intent to achieve a result and that consequently one could not attempt to commit a crime which only required reckless conduct and not a specific intent. *Melvin*, 49 Wis.2d at 250, 181 N.W.2d at 492. *See also People v. Krovarz*, 697 P.2d 378, 381–82 n. 9 (Colo.1985) (the court noted that, "[E]very state court that has considered this question has declined to extend attempt liability to reckless crimes, on the ground that one cannot intend to commit a crime defined as having an unintended result.")

The use of the term "planned" in A.R.S. § 13–1001(A)(2) clearly anticipates an intentional act or step by a defendant which is "planned," that is, designed or intended to culminate or end in the commission of an offense. The court in *Galan*, in declining to express an opinion as to whether the crimes of attempted manslaughter or negligent homicide were cognizable offenses under Arizona law, discussed that portion of our attempt statute that concerned the defense of impossibility, A.R.S. § 13–1001(A)(1). *Galan* involved a defendant who intentionally did certain acts and did them with a reckless state of mind as to the status of property. The court noted that the offense in *Galan* was not truly a preparatory crime but a completed offense which the legislature simply chose to define as an attempt where the status of the property was different from that contemplated by the defendant. 134 Ariz. at 593, 658 P.2d at 246. The court agreed with those cases, including *Rhode*, which have expressed the idea that there is no such criminal offense as an attempt to achieve an unintended result. 134 Ariz. at 592, 658 P.2d at 245. For the above reasons, we conclude that there is no such offense as attempted reckless manslaughter in the State of Arizona.

For the same reasons, we conclude that the offense of attempted negligent homicide is not cognizable under Arizona laws. *See State v. Adams*, 210 La. 782, 786–87, 28 So.2d 269, 270–71 (1946) (one cannot be guilty of attempted negligent homicide where there is neither a specific nor a general intent to commit homicide; because the definition of criminal negligence excludes criminal intent and "attempt" contemplates the presence of an intent, no such crime as attempted negligent homicide is possible); *State v. Williams*, 435 So.2d 1047, 1049 (La.App.1983) (attempted negligence is contradictory). Arizona's negligent homicide statute, A.R.S. § 13–1102, imposes liability if a person, with criminal negligence, causes the death of another person. Criminal negligence is defined in A.R.S. § 13–105(6)(d) as a failure to perceive a substantial and unjustifiable risk that a result will occur. Clearly, the attempt statute is by its plain terms contradictory to that language.

## DENIAL OF RIGHT TO CROSS-EXAMINATION

■ Appellant argues that the trial court denied him the opportunity to cross-

examine the witnesses against him. He argues that the trial court prevented him from cross-examining the victim in this case in order to demonstrate her bias, prejudice, and motive to lie. Counsel sets out a number of examples of questions that were asked and to which objections were made and sustained. However, appellate counsel has failed, as did trial counsel, to set forth any showing of relevancy or materiality which would demonstrate the trial court clearly abused its discretion in failing to permit the inquiry sought by defense counsel.

Counsel suggests that the following factors are relevant: the victim's prior marital history; that she had an illegitimate child at the age of fifteen; that she was in possession of appellant's vehicle; that she had written letters to appellant while he was incarcerated; and that she was seeing another man while her husband, the appellant, was incarcerated. Appellant also argues that the trial court improperly prohibited questions to witnesses and to the victim concerning statements the victim made after the incident in which she allegedly stated the shooting had been an accident. The state argues that the questions referred to in appellant's opening brief attempted to introduce evidence that was either hearsay, irrelevant, called for speculation, or was without proper foundation. The state also notes that counsel did not present any offers of proof demonstrating that the answers to the questions would lead to relevant or admissible evidence. Rule 103, Arizona Rules of Evidence. The state contends that even if the trial court did err in sustaining some of the state's objections to questions properly asked of the victim regarding her prior statements concerning the accidental nature of the shooting, the error was harmless. The state argues the jury's verdict would have been the same because there were disinterested eyewitnesses who watched appellant shoot his wife in the back and then attempt to shoot her again. Finally, the state argues that trial counsel was permitted to adequately attack the credibility of the victim during his examination.

Although demonstrating a witness' motivation for testifying is an important function of the right of cross-examination, a trial judge retains wide latitude to impose reasonable limits on cross-examination based on such concerns as confusion of the issues, interrogation that is repetitive or only marginally relevant, and harassment of the witness. *Delaware v. Van Arsdall,* 475 U.S. 673, 678–679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986). *See also State v. Fleming,* 117 Ariz. 122, 571 P.2d 268 (1977). "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15, 19 (1985) (per curiam) (emphasis in original). Essentially, what appellant appears to be arguing on appeal is that he was denied the right to "run at large in cross-examination." *State v. Fleming,* 117 Ariz. at 125, 571 P.2d at 271. Although appellant argues that the testimony defense counsel attempted to elicit by cross-examination concerned the "very incident which was the basis of the charge," that clearly was not the case.

Appellant argues that he admitted to the shooting, but that whether the shooting was accidental was the critical issue to be determined by the jury. Therefore, he argues, proper evaluation of the victim's testimony was crucial. At trial, counsel argued that he should be allowed to show the existence of a prior marriage because the victim might have stated in the application for a marriage license, when she married appellant, that she was not then married. Counsel also argued that it was relevant to show that she may have been seeing one of her ex-boyfriends, because it might tend to prove appellant's acts were not premeditated. Although appellant has suggested other theories supporting an argument for admissibility of the excluded evidence on appeal, those arguments were not presented to the trial court, nor was an offer of proof ever made as required by Rule 103, Arizona Rules of Evidence. The court did not

err in excluding this proffered "evidence." *State v. Fleming.*

Appellant suggests that the trial court erred in refusing to permit him to cross-examine the victim or other witnesses with respect to whether the victim had stolen appellant's vehicle after the incident. However, when asked to provide some support for asking these questions, he failed to do so. *See* Rule 103, Arizona Rules of Evidence. Appellant's counsel simply raised the inference of theft and presented no evidence to support it. Thus, he was essentially asking to be allowed to question the witness by innuendo, which is prohibited. *State v. Holsinger,* 124 Ariz. 18, 21, 601 P.2d 1054, 1057 (1979).

Appellant also objected to the trial court's exclusion of Exhibit 22, a letter written by the victim to the appellant while he was incarcerated. The victim admitted writing the letter and that in it she stated the shooting was an accident. In addition, during the victim's testimony she also admitted that she had told appellant's parents, his brother, and his sister-in-law that the shooting was an accident. It is clear that although the trial court could have admitted the exhibit in its discretion, the failure to admit it was not reversible error because the evidence was clearly cumulative. *State v. Dunlap,* 125 Ariz. 104, 106, 608 P.2d 41, 43 (1980).

Appellant also argues that he should have been allowed to ask his brother, who testified at trial, if he knew "of any reason [the victim] has changed her thinking." This question clearly invited the witness to speculate and the objection was correctly sustained. In addition, there was no showing that the refusal to permit the witness to answer the question substantially prejudiced the appellant.

Appellant was given ample opportunity to put the victim's credibility into issue. The trial court did not abuse its discretion in prohibiting further inquiries into the areas set forth by the appellant on appeal. *State v. Schrock,* 149 Ariz. 433, 438, 719 P.2d 1049, 1054 (1986) ("[T]he parameters of cross-examination will not be disturbed on appeal unless the trial court has clearly abused its discretion.") As recently noted by the Supreme Court in *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986), "[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." The court also held that the harmless error doctrine applied to the analysis of a claim of a denial of right to confrontation. After reviewing the record, we think the trial court allowed adequate cross-examination on relevant matters to allow the jury to assess the credibility of the victim. Any error that may have occurred in precluding the inquiries specified by appellate counsel was clearly harmless. We find no abuse of discretion.

## USE OF OUT–OF–STATE FELONY CONVICTION TO ENHANCE SENTENCE

■ Appellant argues that a prior conviction in California for assault with a deadly weapon was improperly used by the trial court to sentence him as a second offense, dangerous offender. He argues that the trial court erred in refusing to strike the allegation of dangerousness with respect to the California conviction. The evidence introduced at trial showed that appellant had pled guilty to a violation of § 245(a) of the Penal Code of California. Appellant argues the trial court erred in concluding that a prior conviction for that offense in California would have been a "dangerous" offense if it had been committed within this state. The California code provision under which appellant pled guilty provided:

Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison for two, three or four years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment.

Appellant argues that although the California conviction could have been used for enhancement purposes under A.R.S.

§ 13–604, it could not be considered a "dangerous" offense because he was placed on three years probation. Appellant reaches this conclusion on the basis of Rule 414, California Rules of Court, when read in conjunction with California Penal Code § 12022.5. Rule 414 sets forth certain factors that a court should consider in its decision to grant or deny probation, including such matters as whether the defendant was armed with or used a weapon. California Penal Code § 12022.5 makes it mandatory that anyone who uses a firearm in the commission of a felony shall, in addition and consecutive to the punishment proscribed for the underlying felony, be punished by an additional term of two years imprisonment. Section 12022.5 does not apply if the use of the firearm was an element of the offense for which the defendant was convicted unless he was convicted under § 245. Based on the court rule requiring the court to consider the use of a weapon before deciding to grant probation, appellant reaches the unsupported conclusion that because he received probation, the "use of a firearm" portion of the offense must have been dismissed.

The appellant pled guilty to a charge of assault with a deadly weapon, a handgun, and by means of force likely to produce great bodily harm, but without the additional allegation of § 12022.5. In return for the appellant's plea, the state dropped the other counts against him as well as the enhancement allegation under § 12022.5. Appellant, nevertheless, pled guilty to an offense which would be a dangerous offense had it been committed in Arizona. The only part of the allegation in the indictment which was dropped as a result of the plea agreement was the allegation requiring an additional, consecutive two-year term of imprisonment for the use of a firearm. That offense having been committed, it was clearly permissible for the trial judge to consider it as a dangerous offense imposing an enhanced sentence for a second dangerous offense in this case. *Cf. State v. Hunter*, 137 Ariz. 234, 669 P.2d 1011 (App.1983).

The state also notes that appellant did not plead guilty to simple assault as de-fined in § 240, California Penal Code. Assault with a deadly weapon, as defined in California Penal Code § 245(a), would constitute the crime of aggravated assault under A.R.S. § 13–1204(A)(2). *See State v. Gordon*, 120 Ariz. 172, 174, 584 P.2d 1163, 1165 (1978). In California, the offense of assault with a deadly weapon also requires, as an element of the offense, that the defendant be armed or use a dangerous weapon or firearm. *People v. Allums*, 47 Cal.App.3d 654, 659, 121 Cal.Rptr. 62, 65, *cert. denied*, 423 U.S. 934, 96 S.Ct. 291, 46 L.Ed.2d 266 (1975). Clearly, the dismissal of the punishment enhancing provisions of California Penal Code § 12022.5 did not alter the essential elements of the offense to which the appellant pled guilty. The determination of the "dangerousness" of a prior conviction for purposes of A.R.S. § 13–604 is a question of law which was properly decided by the trial judge. *See State v. Hunter*, 137 Ariz. at 239, 669 P.2d at 1016.

The judgment and sentence are affirmed.

CORCORAN and EUBANK, JJ., concur.