NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JOHN ANTHONY RUSTIN, *Appellant.*

No. 1 CA-CR 14-0710
FILED 10-15-15

---

Appeal from the Superior Court in Maricopa County
No. CR2013-428561-001
The Honorable David B. Gass, Judge

**AFFIRMED**

---

COUNSEL

Office of the Arizona Attorney General, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Office of the Maricopa County Public Defender, Phoenix
By Margaret M. Green
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Peter B. Swann joined.

**T H U M M A,** Judge:

¶1        John Anthony Rustin appeals from his convictions and resulting sentences for seven counts of sexual assault, one count of aggravated assault and one count of kidnapping. Rustin argues the superior court erred by improperly admitting expert testimony at trial, in not allowing him to represent himself or testify and in restricting his cross-examination of the victim. Because Rustin has not shown error, the convictions and sentences are affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        The State charged Rustin with 11 counts of sexual assault, each a Class 2 felony, one count of aggravated assault, a Class 4 felony, and one count of kidnapping, a Class 2 felony. The victim's trial testimony revealed the following.

¶3        Rustin and the victim first met late one afternoon on Mill Avenue in Tempe after the victim had used illegal drugs. For the next several hours, the two walked to various stores in the area, and Rustin purchased and shoplifted alcohol that the two drank. Rustin also shoplifted a dress, which the victim then wore.

¶4        Rustin and the victim eventually sat down outside of a church where Rustin punched her in the face after she refused to have sex with him. The victim's nose bled profusely, and she sustained serious physical injuries to her eye and cheek. Rustin then grabbed the victim's hand and took her to a nearby isolated area where he repeatedly forced her to have

---

[1] This court views the evidence in the light most favorable to sustaining the conviction and resolves all reasonable inferences against the defendant. *State v. Karr*, 221 Ariz. 319, 320 ¶ 2, 212 P.3d 11, 12 (App. 2008).

sex with him for a number of hours. During this time, Rustin would momentarily walk away, disappear and then return.

¶5          After leaving the church, the two walked along nearby railroad tracks in a residential neighborhood to an area next to a school. There, Rustin again forced the victim to have sex with him. They eventually walked onto the school grounds, where the victim saw maintenance workers and people walking along the athletic track but she did not seek aid at that time. They then returned to a store, and while the victim was alone outside, she called 9-1-1. Police arrived almost immediately and arrested Rustin.

¶6          The jury found Rustin guilty of seven counts of sexual assault, one count of aggravated assault, one count of kidnapping and not guilty on the remaining counts. The court sentenced Rustin to consecutive prison terms totaling 136 years with credit for time served. This court has jurisdiction over Rustin's timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033(A)(1) (2015).[2]

## DISCUSSION

### I.    The Superior Court Did Not Err In Allowing Expert Testimony.

¶7          Without objection, Melissa Brickhouse-Thomas, a social worker employed as a victim services provider and critical incident coordinator for the Glendale Police Department, testified on behalf of the State about research and her experience in trauma memories and victims' physiological and behavioral responses to sexual violence. Knowing nothing about the circumstances of this case, Brickhouse-Thomas explained the existence of what she referred to as a "rape myth." She testified that people "react[] differently" when they are being sexually assaulted, and given her experience dealing with victims of sexual violence, it is "not uncommon" for such victims to not fight back during an assault or to not immediately call the police. She also testified that victims of sexual violence may not be able to recount the violent events in sequential order. Rustin argues allowing this testimony was error because it was unhelpful to the jury in that "the only lesson the jury could take away from [the] testimony was that *any* behavior exhibited by a person alleging sexual violence was proof of sexual violence."

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶8　　　　Rustin failed to make a timely objection, meaning review on appeal is limited to fundamental error. *See* Ariz. R. Crim. P. 21.3(c); *State v. Henderson*, 210 Ariz. 561, 567 ¶¶ 19-20, 115 P.3d 601, 607 (2005). "Accordingly, [Rustin] 'bears the burden to establish that "(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice."'" *State v. James*, 231 Ariz. 490, 493 ¶ 11, 297 P.3d 182, 185 (App. 2013) (citations omitted). Rustin does not challenge Brickhouse-Thomas's qualifications as an expert. Instead, he claims the superior court erred in finding that her testimony would "help the trier of fact to understand the evidence or to determine a fact in issue." Ariz. R. Evid. 702(a).[3]

¶9　　　　Although Rustin is correct that Brickhouse-Thomas testified that "everybody reacts differently" to being sexually assaulted, that explains why her testimony was relevant. Rustin's trial defense was the victim consented, meaning the victim's credibility was a key trial issue. The State offered the testimony to dispel perceived misconceptions about the response of sexual assault victims. The victim testified that her response was an attempt at self-preservation because she was afraid Rustin would hit her again if she did not comply with his demands. For the same reason, the victim testified she did not alert others or call the police until she felt safe in doing so. She also had difficulty during the investigation and at trial recounting the specific instances of the sexual assaults and their sequence.

¶10　　　　Therefore, the superior court did not abuse its discretion in concluding that Brickhouse-Thomas's opinions would be helpful for the jury to properly understand the victim's testimony. As a result, the testimony satisfied Rule 702(a), and no error, fundamental or otherwise, occurred. *See State v. Salazar-Mercado*, 234 Ariz. 590, 594 ¶ 15, 325 P.3d 996, 1000 (2014) (holding "cold expert" testimony satisfied Rule 702(a) because it "might have helped the jury to understand possible reasons for the delayed and inconsistent reporting" by sexual abuse victims).

## II.　The Superior Court Did Not Deny Rustin His Right To Self-Representation.

¶11　　　　Rustin argues the superior court committed structural error in failing to "fairly address Rustin's desire to represent himself." **[OB at 24]** This issue arose at a hearing on defense counsel's motion to reconsider the denial of a requested continuance, where counsel noted Rustin objected to the continuance. After granting the motion to reconsider and setting trial

---

[3] Rustin does not argue, and this court need not decide, whether Brickhouse-Thomas's testimony was admissible under Rule 702(b)-(d).

approximately two months later, Rustin asked "Is there any way that I can just represent myself? I don't need a lawyer. . . . I don't need to go through all the case, I just [need to] go in court. . . . I just want to get this over with." The court took a recess so Rustin could confer with counsel. When the hearing resumed, the court asked whether Rustin was still interested in representing himself, and he responded "It's still the same either way, so I might as well go with whatever you feel is right. . . . I don't want to say no more on that matter." The court had a brief exchange with Rustin personally explaining that, in granting the motion to continue, it was balancing his rights to have a speedy trial with his attorney's attempt to provide the best defense possible, concluding by stating "and so based on that balancing, I'm going to go ahead and grant the Motion to Continue. The defendant has not moved forward with any right to represent himself."

¶12        To properly invoke the constitutional right to self-representation, a criminal defendant must unequivocally request to represent himself. *State v. Henry*, 189 Ariz. 542, 548, 944 P.2d 57, 63 (1997). Here, Rustin -- as the court indicated -- did not unequivocally request to represent himself. Rustin provides no authority supporting the proposition that structural error occurs under these circumstances. *See, e.g., State v. McLemore*, 230 Ariz. 571, 575-76, ¶ 15, 288 P.3d 775, 779-80 (App. 2012) ("[A]n erroneous failure to accord a defendant his *properly asserted right* to represent himself when he is competent to waive counsel in a criminal case is structural error requiring reversal without a showing of prejudice.") (emphasis added). On this record, no such error occurred. *See State v. Torres*, 208 Ariz. 340, 344, ¶ 12, 93 P.3d 1056, 1060 (2004) (holding summary denial of defendant's request to change counsel is not structural error).

### III.    The Superior Court Did Not Deny Rustin His Right To Testify.

¶13        After the State rested in its case-in-chief, at the request of defense counsel and outside of the presence of the jury, the superior court addressed Rustin and discussed with him the evidentiary limitations and other issues that would be implicated if Rustin decided to testify. The next day, defense counsel informed the court that Rustin had decided to not testify. **[RT 7/22/14 at 3]** On appeal, Rustin contends the court intimidated him into waiving his right to testify, resulting in fundamental error. The record, however, does not support this contention.

¶14        The lengthy colloquy between the superior court and Rustin about his decision to testify made it clear that: (1) the decision to testify was "solely up to" Rustin; (2) if he did elect to testify, Rustin would need to abide by the court's evidentiary rulings or face contempt; (3) his testimony

would be in response to his attorney's questions; (4) an election to testify would be irrevocable after he took the stand and answered the first question; and (5) the State would be allowed to cross-examine him on his prior felony convictions. After Rustin indicated he understood, but was concerned the court would get mad at him, the following exchange took place:

> THE COURT: Okay. And I'm not having this conversation, because *if you want to testify, I want you to. I just want you to know what you can or can't do.* Because I don't want you to find yourself in trouble for doing something that you can't. *So that's why we're talking about what the parameters are so that you make a knowing decision.* And your attorney, I think, has talked to you a little bit also about what you can get into.
>
> And I know that that's – you're concerned about telling your side of the story. And that's why you're looking at this. So I just want you to make sure you[] understand what you can and can't do.
>
>      . . . .
>
> *So I absolutely want you to be able to testify. I just want to make sure that you don't cross a line that results in a mistrial or could potentially put you in some other situation.* Okay? And my understanding is -- and, Counsel, did you want to talk some more, or he's going to testify?
>
> [DEFENSE COUNSEL]: I think it's up in the air, but I'll talk to him some more.
>
> . . .
>
> THE COURT: All right. So make sure you just talk with your attorney about it.

(Emphasis added.)

**¶15**        Rather than indicating the superior court intimidated him, the record shows the court took care to clearly explain that only Rustin could decide whether to testify. The record also shows the court took care to ensure Rustin understood what topics he could testify about so that his decision would be an informed one. And telling Rustin that he could be held in contempt if he violated the court's prior evidentiary orders did not impermissibly interfere with Rustin's right to testify. *See State v. Tucker*, 215 Ariz. 298, 307, ¶¶ 6–10, 160 P.3d 177, 186 (2007) (noting that trial court's informing defendant about the consequences of testifying does not interfere with defendant's right to testify). Accordingly, no error occurred, fundamental or otherwise.

## IV.    The Superior Court Did Not Improperly Limit Cross-Examination Of The Victim.

**¶16**        The superior court, over Rustin's objection, granted the State's pretrial motion to preclude evidence of the victim's criminal history pursuant to Arizona Rule of Evidence 609(a). Specifically precluded was evidence that the victim was on probation for a misdemeanor possession of marijuana conviction at the time of her interaction with Rustin. Although excluding evidence of probation, the court allowed Rustin to cross-examine the victim regarding her criminal activities—including drug use and participation in shoplifting—on the day she was assaulted.

**¶17**        Rustin argues the court abused its discretion in precluding this evidence. Rustin does not argue that evidence of the victim's misdemeanor conviction and resulting probation were admissible under Rule 609(a). Rather, Rustin contends that he should have been allowed to cross-examine the victim regarding her status as a probationer, because it gave the victim a motive to conceal her illegal activities and alcohol consumption by implicating him.

**¶18**        In making this argument, Rustin relies primarily on *Davis v. Alaska*, 415 U.S. 308 (1974). In *Davis*, the defendant was charged with burglary, and the prosecution's "crucial witness" for identifying the defendant (who was also a possible suspect) was on juvenile probation at the time of the offense and trial. *Davis*, 415 U.S. at 310-11, 317, 319. The defendant wanted to introduce the witness' juvenile record to show that, at the time the witness was assisting police in identifying the defendant, the witness did so out of concern that his probation would be revoked. *Id.* The prosecution successfully obtained a protective order from the trial court precluding this evidence. *Id.* at 310-11. The United States Supreme Court reversed, noting that the "accuracy and truthfulness" of the witness's

identification testimony "were key elements in the State's case against" the defendant. *Id.* at 317. The Court also reasoned that the witness's juvenile record was admissible, in part, "to afford a basis for an inference of undue pressure because of [the witness's] vulnerable status as a probationer . . . as well as [the witness's] possible concern that he might be a suspect in the investigation." *Id.* at 317-18.

**¶19**　　　　　Here, by contrast, the victim was not the only source of evidence that identified Rustin as the perpetrator. His DNA was found on the victim, and the victim's blood was found on the shirt Rustin was wearing when he was arrested. Furthermore, the victim here was not a suspect for the charges against Rustin. Accordingly, the rationale in *Davis* that the witness's probation status was improperly precluded is not present here. *Davis*, therefore, does not support reversal.

**¶20**　　　　　Moreover, Rustin incorrectly suggests that he was not afforded the opportunity to cross-examine the victim about motive. The victim testified during cross-examination that she was afraid she "was going to get caught for shoplifting" with respect to the dress Rustin had stolen. The victim also testified during cross-examination that she did not inform law enforcement of her illegal drug use during the day she was assaulted because "smoking marijuana and also using methamphetamine is against the law," admitting she was not being charged with those crimes. During closing argument, defense counsel argued:

> And [the victim] hasn't been charged. No one has come in here and said she was, but, once again, ask yourself, if any of you stood up where she did and admitted to illegal drug use, would you not be charged? Ask yourself the State -- ask yourself why that is happening.

**¶21**　　　　　Based on this record, Rustin had a sufficient opportunity to challenge the victim's credibility given her participation in illegal activities the day she was assaulted. Consequently no error occurred, and the court properly precluded evidence of the victim's probation status. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."); *State v. Adams*, 155 Ariz. 117, 122, 745 P.2d 175, 180 (App. 1987) (concluding no Confrontation Clause violation occurred where defendant had "ample opportunity to put the victim's credibility into issue").

**CONCLUSION**

¶22        Rustin's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: jt