IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

FEB 29 2008

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA, )
)
Appellee, )
)
v. )
)
DONALD ALLEN GUADAGNI, )
)
Appellant. )
)

2 CA-CR 2006-0251
DEPARTMENT B

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20054436

Honorable Hector E. Campoy, Judge

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Kathryn A. Damstra                              Tucson
                                                        Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Stephan J. McCaffery                                                Tucson
                                                       Attorneys for Appellant

E C K E R S T R O M, Presiding Judge.

¶1     Appellant Donald Allen Guadagni was convicted after a jury trial of one count of bigamy, a class five felony, and ordered to pay restitution to the two women he had married. On appeal, Guadagni argues the state presented insufficient evidence of his later marriage to support his conviction. He also contends that his wife and putative spouse were not victims eligible to receive restitution and that the court erred by ordering restitution after a hearing at which neither he nor his counsel was present. We affirm Guadagni's conviction but vacate the restitution award and remand this matter to the trial court for a redetermination of restitution.

## Facts and Procedural Background

¶2     Guadagni was charged by indictment with bigamy, a class five felony, in violation of A.R.S § 13-3606(A). The state offered evidence at trial showing Guadagni had married Gail D. on October 4, 1990, and, while still married to and living with Gail, he participated in a marriage ceremony with Sarah W. on September 1, 2000. Guadagni and Sarah had obtained a marriage license earlier that day from the Pima County Superior Court, and they both signed it following a solemnization ceremony held in Reid Park. The licensed minister who presided over the ceremony also signed the license, along with two witnesses. The minister then gave the license to Guadagni and Sarah at their request. Neither Guadagni nor Sarah ever recorded the license.

**¶3** Sarah had known Guadagni had been married before, but Guadagni showed her a document that convinced her he and Gail were divorced. Gail learned about the later marriage when she discovered the license among Guadagni's paperwork.

**¶4** At the close of the state's evidence, Guadagni moved for a judgment of acquittal under Rule 20, Ariz. R. Crim. P. He argued, *inter alia*, that he was not married to Sarah because neither he nor Sarah had ever recorded the license and that failure demonstrated his lack of intent to marry. The trial court denied the motion and the jury found Guadagni guilty of bigamy.

**¶5** The trial court suspended the imposition of sentence, placed Guadagni on three years' supervised probation, and ordered him to serve fifteen days in jail as a condition of probation. At the sentencing hearing, Sarah requested $2,000 in restitution for the cost of obtaining an annulment; Gail requested $1,966.74 for lost wages and travel expenses incurred as a result of Guadagni's trial. Guadagni maintained Gail was not a victim under Arizona law and requested a "hearing on the requested restitution." The court scheduled the hearing for September 11, 2006. Due to a scheduling conflict, the court continued the hearing to September 25.

**¶6** Neither Guadagni nor his attorney appeared on September 25. However, Guadagni's attorney, Anthony Knowles, had filed a "motion to withdraw as counsel of record," dated September 22, which was received by the court on September 25, the day of the hearing. Nonetheless, the court proceeded with the hearing, stating at the outset:

3

I will note the absence of Mr. Knowles. He did call and left a message[1] indicating that he had withdrawn from representing the defendant, at least at the Court of Appeals. I believe he is still of record in this case and we will proceed in his absence and in the absence of the defendant.

Although Gail appeared at the hearing and Sarah was available to testify telephonically from her home in Canada, the court concluded that the matter was uncontested and required no testimony from either of them. The court accepted supporting documentation from the state and ordered restitution for the full amounts sought by Gail and Sarah totaling $4,164.88.[2] This appeal followed.

**Sufficiency of the Evidence**

¶7        Guadagni first argues the state presented insufficient evidence he and Sarah were married because the couple took no action to record their marriage license, as required by A.R.S. § 25-125(B). Guadagni maintains there consequently was no marriage under Arizona law and, therefore, the trial court erred in denying his motion for a judgment of acquittal pursuant to Rule 20.

¶8        We review a trial court's denial of a motion for judgment of acquittal for an abuse of discretion and will reverse only if no substantial evidence supports the conviction. Ariz. R. Crim. P. 20(a); *State v. Henry*, 205 Ariz. 229, ¶ 11, 68 P.3d 455, 458 (App. 2003).

---

[1]The court's minute entry shows the telephone message was left with the prosecuting attorney, not the court.

[2]There is a $100 discrepancy between the court's total restitution order ($4,164.88) and its minute entry ($4,264.88).

4

Substantial evidence is evidence that a reasonable jury can accept as sufficient to infer guilt beyond a reasonable doubt. *State v. Fulminante*, 193 Ariz. 485, ¶ 24, 975 P. 2d 75, 83 (1999). If reasonable fact-finders could differ on the inferences to be drawn from the evidence, we must accept those reasonable inferences that support the verdict. *Id.* ¶ 27; *Henry*, 205 Ariz. 229, ¶ 11, 68 P.3d at 458. When, as here, we must construe the meaning of a statute to determine whether sufficient evidence has been presented, we conduct that part of our analysis de novo, and, in so doing, our principal aim is to effectuate legislative intent. *Henry*, 205 Ariz. 229, ¶¶ 13-14, 68 P.3d at 459.

¶9         Arizona's bigamy statute provides: "A person having a spouse living who knowingly marries any other person is guilty of a class 5 felony." § 13-3606(A). Thus, to convict a person of that crime, the state must prove that a person knowingly has married another person, and that the accused would have had a valid subsequent marriage under Arizona civil law but for his or her earlier, ongoing marriage. *See Ford v. State*, 21 Ariz. 567, 570, 192 P. 1117, 1118 (1920) (bigamy charge must allege second marriage would have been legal marriage but for existence of other spouse; state must prove details of second marriage, including prima facie authority of person officiating); *cf. United States v. Tenney*, 2 Ariz. 127, 135, 11 P. 472, 475 (1886) (affirming federal bigamy conviction, holding "marriage laws of Arizona would govern as the proof of marriage").[3]

---

[3]We note that Arizona's child bigamy statute, A.R.S. § 13-3609(A), (D)(1), allows prosecution for a "marriage" in which no marriage license was "issued."

¶10    Section 25-111, A.R.S., sets forth the requirements for a lawful marriage in Arizona:

> A.  A marriage shall not be contracted by agreement without a marriage ceremony.
>
> B.  A marriage contracted within this state is not valid unless all of the following occur:
>
> 1.  A license is issued as provided in this title.
>
> 2.  The marriage is solemnized by a person authorized by law to solemnize marriages or by a person purporting to act in such capacity and believed in good faith by at least one of the parties to be so authorized.
>
> 3.  The marriage is solemnized before the expiration of the marriage license.

Section 25-125 further provides:

> A.  A valid marriage is contracted by a male person and a female person with a proper marriage license who participate in a ceremony conducted by and in the presence of a person who is authorized to solemnize marriages and at which at least two witnesses who are at least eighteen years of age participate.
>
> B.  A marriage license shall be signed by both persons married, two of the witnesses to the marriage ceremony and the person who solemnized the marriage, who shall return the signed marriage license to the clerk of the superior court for recording.

Although Guadagni is correct that § 25-125(B) requires that a marriage license be recorded, nothing in that or any other pertinent statute establishes what effect, if any, the failure to record has on the validity of a marriage.

6

**¶11** Notably, the requirement that a marriage license be filed and recorded is directed at the official who solemnizes a marriage, not the parties to the marriage. § 25-125; *Barbosa-Johnson v. Johnson*, 174 Ariz. 567, 569, 851 P.2d 866, 868 (App. 1993). And, the only express sanction for the failure to file and record the license is likewise directed exclusively at the official. *See* A.R.S. § 25-128(A)(3), (B) (official who has failed to record license commits class two misdemeanor). Together those provisions suggest that the legislature intended to enforce the recording requirement by creating incentives for the relevant official to carry out that duty—rather than by invalidating the marriage altogether, a sanction that would, under most circumstances, impose significant legal consequences on the marrying parties for a mere ministerial oversight. *See State v. Huskie*, 202 Ariz. 283, ¶ 5, 44 P.3d 161, 163 (App. 2002) (in determining legislative intent, we consider, *inter alia*, statute's "'consequences, spirit and purpose'"), *quoting Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶ 8, 19 P.3d 1241, 1245 (App. 2001). We therefore follow existing Arizona jurisprudence and reject Gaudagni's claim that the mere failure to record a marriage license invalidates the marriage. *See Barbosa-Johnson*, 174 Ariz. at 568-69, 851 P.2d at 867-68 (finding marriage not invalidated by non-recording of license even when license remains in parties' control).

**¶12** Having concluded the state need not prove that a marriage license was recorded to demonstrate a person has "knowingly marrie[d]" in violation of § 13-3606(A), we reject Guadagni's claim that the state presented insufficient evidence of his guilt.

7

Guadagni does not dispute that he was married to Gail at the time he participated in a marriage ceremony with Sarah and that his marriage to Gail was valid. The state presented evidence that Guadagni and Sarah had obtained a marriage license together, exchanged vows in the presence of a minister and two suitable witnesses, and signed their names to the license. Thus, Guadagni and Sarah did all that was statutorily required of them to marry each other and, were it not for his ongoing marriage to Gail, Guadagni and Sarah would have been legally married as a result of their Reid Park ceremony. Guadagni claims he lacked the necessary intent to marry Sarah at the time of the ceremony, as evidenced by his failure to return the license to the official to be recorded. But, even assuming arguendo that the state was required to show such intent, *see* § 13-3606(A) (mental state for crime is "knowingly"), the jury could reasonably infer such intent from his participation in the ceremony before witnesses and his execution of the license. Because there was substantial evidence showing Guadagni married Sarah while still married to Gail, the trial court did not abuse its discretion by denying Guadagni's motion for a judgment of acquittal.

## Restitution

¶13 Guadagni next contends that bigamy is not an offense for which a court may impose restitution on behalf of a victim. He argues "[b]igamy . . . is not an offense against anyone," because fraud is not part of the crime, and the knowledge or complicity of either spouse is irrelevant to the charge. From this, Guadagni concludes, "the parties' welfare is not the object of legislative protection—the institution of monogamous marriage is," making

8

bigamy a victimless crime meant to "promot[e] monogamous marriages and prohibit[] even consensual polygamous marriages." Guadagni had specifically argued below and to this court that Gail, his legal wife, was not a statutory victim eligible to receive restitution. Insofar as his argument presents a question of law and statutory interpretation, we review this matter de novo. *See State v. Getz*, 189 Ariz. 561, 563, 944 P.2d 503, 505 (1997).

¶14        Following a criminal conviction, the trial court must "require the convicted person to make restitution to the person who is the victim of the crime . . . in the full amount of the economic loss." A.R.S. § 13-603(C). A victim is defined as "a person against whom the criminal offense has been committed." Ariz. Const. art. II, § 2.1(C); A.R.S. § 13-4401(19). A crime, in turn, is any felony or misdemeanor, A.R.S. § 13-105(6), and an offense is conduct punishable by imprisonment or fine under state or local law, A.R.S. § 13-105(23). *See State ex rel. Thomas v. Klein*, 214 Ariz. 205, ¶ 15, 150 P.3d 778, 782 (App. 2007) (holding unconstitutional definition of criminal offense in § 13-4401(6) insofar as it narrowed definition of victim in effect when Victims' Bill of Rights adopted). In other words, only crimes that may be committed *against* someone will have victims.[4]

¶15        Although there may be instances in which bigamy is a "victimless crime"—with all parties to a plural marriage fully informed, willing participants, and no

___

[4]Statutes may, by defining "criminal offense," A.R.S. § 13-4401(6), expand the class of victims of a crime. *See, e.g., State ex rel. Romley v. Superior Court*, 184 Ariz. 409, 411, 909 P.2d 476, 478 (App. 1995) (finding owner of damaged car to be restitution-eligible victim of intoxicated driver insofar as offense of driving under influence of intoxicant posed "threat of physical injury" under § 13-4401(6)).

one's interests acted *against*, in any ordinary sense of the word—a hypothetical victimless case does not render bigamy a victimless crime. As our supreme court has implicitly held, the elements of a crime do not alone determine whether a particular person is entitled to restitution. Rather, the facts underlying a conviction determine whether there are victims of a specific crime as well as the amount of their recoverable loss. *See, e.g., State v. Wilkinson*, 202 Ariz. 27, ¶¶ 5, 9, 14, 39 P.3d 1131, 1132-34 (2002) (finding party to a contract a victim of offense of contracting without license; victim entitled to recovery to extent "particular criminal conduct directly cause[d] the victim's loss").

¶16      This court has held that not all persons or entities who suffer financially as a result of an offense are victims. *See, e.g., State v. French*, 166 Ariz. 247, 248-49, 801 P.2d 482, 483-84 (App. 1990) (motel owner not victim entitled to cleaning costs incurred as result of sexual assault on premises); *State v. Maupin*, 166 Ariz. 250, 253, 801 P.2d 485, 488 (App. 1990) (state not victim entitled to recoup costs of prosecution). However, our courts repeatedly have found persons to be "victims" of a crime when the elements of the offense necessarily involve unlawful interaction with those persons or their property. *See, e.g., Wilkinson*, 202 Ariz. 27, ¶ 1, 39 P.3d at 1132 (contracting without license; contractee victim); *In re William L.*, 211 Ariz. 236, ¶¶ 2-3, 119 P.3d 1039, 1041 (App. 2005) (unlawful use of means of transportation; car owner victim); *State v. Guilliams*, 208 Ariz. 48, ¶¶ 3, 15, 90 P.3d 785, 787, 789-90 (App. 2004) (attempted escape; state prison victim);

*State v. Sorkhabi*, 202 Ariz. 450, ¶¶ 11-13, 46 P.3d 1071, 1074 (App. 2002) (resisting arrest; arresting officer victim).

¶17 Keeping these principles in mind, we conclude bigamy is a felony that, under many circumstances, involves unlawful interaction with persons to their detriment. Bigamy requires multiple marriages as an element of the offense. And marriage is an act that necessarily requires another person's involvement. Whether that act results in victims will, like contracting without a license, depend on the circumstances of the case. Here, Gail and Sarah clearly were victims. Both testified that they had not consented to Guadagni's other marriage. Guadagni therefore committed his crime "against" these two women, making them both "victims" of his unlawful marriage as defined by our constitution. *See* Ariz. Const. art. II, § 2.1(C) ("'Victim' means a person against whom the criminal offense has been committed . . . except if the person is in custody for an offense or is the accused.").[5]

¶18 Accordingly, Gail and Sarah are entitled to restitution for the economic losses they suffered as a direct result of Guadagni's unlawful marriage. *See Wilkinson*, 202 Ariz. 27, ¶ 7, 39 P.3d at 1133 (restitution statutes "direct a court to award restitution for those

---

[5]We note that a victim's comparative fault for an injury or potential criminal culpability ordinarily is not relevant to his or her status and eligibility for restitution. *See, e.g., Knapp v. Martone*, 170 Ariz. 237, 239, 823 P.2d 685, 687 (1992) (mother's potential criminal liability for children's murder); *State v. Clinton*, 181 Ariz. 299, 299-300, 890 P.2d 74, 74-75 (App. 1995) (comparative fault for drinking with driver). Yet the putative victim's role in a crime may be a threshold question courts must answer in order to determine whether the crime was committed *against* someone in "the plain language of . . . our constitution." *Knapp*, 170 Ariz. at 239, 823 P.2d at 687; *see also State v. Roscoe*, 185 Ariz. 68, 71, 912 P.2d 1297, 1300 (1996).

11

damages that flow directly from the defendant's criminal conduct, without the intervention of additional causative factors"). Section 13-105(14), A.R.S., defines "economic loss" as "any loss incurred by a person as a result of the commission of an offense . . . includ[ing] lost earnings." Wages lost due to voluntary attendance at trial are recoverable, *State v. Lindsley*, 191 Ariz. 195, 198-99, 953 P.2d 1248, 1251-52 (App. 1997), as are a victim's travel expenses, *State v. Madrid*, 207 Ariz. 296, ¶ 10, 85 P.3d 1054, 1058 (App. 2004).

**¶19** The record suggests that Gail sought restitution for her lost wages and travel expenses related to the trial; Sarah sought restitution for her costs in obtaining an annulment.[6] Upon proper documentation of those events and the amounts arising therefrom, the amounts these victims sought are recoverable as restitution pursuant to § 13-105(14), flowing sufficiently from the defendant's criminal conduct under the test set forth in *Wilkinson*, 202 Ariz. 27, ¶ 7, 39 P.3d at 1133.

**¶20** Last, Guadagni argues that "the [c]ourt's restitution order is illegal because it was entered after an *ex parte* proceeding in violation of Guadagni's due process and assistance of counsel rights." We agree that the order was flawed for this reason and must be vacated.

**¶21** "The right to counsel in criminal proceedings is guaranteed by the Sixth Amendment to the United States Constitution and Article 2, Section 24, of the Arizona

---

[6]Although the state offered two exhibits to support these awards and the trial court admitted them into evidence, these documents were not included in the record on appeal.

12

Constitution." *State v. Taylor*, 216 Ariz. 327, ¶ 13, 166 P.3d 118, 122 (App. 2007). Restitution is part of sentencing, and a restitution hearing is therefore a criminal proceeding. *In re Stephanie B.*, 204 Ariz. 466, ¶ 15, 65 P.3d 114, 117-18 (App. 2003); *State v. Lewus*, 170 Ariz. 412, 414, 825 P.2d 471, 473 (App. 1992); *State v. Scroggins*, 168 Ariz. 8, 9, 810 P.2d 631, 632 (App. 1991); *State v. Cummings*, 120 Ariz. 69, 70-71, 583 P.2d 1389, 1390-91 (App. 1978). Indeed, when a criminal defendant is ordered to pay restitution as a condition of probation, as Guadagni was here, his failure to make timely court-ordered payments could constitute a probation violation and result in jail time or imprisonment. *See State v. Robinson*, 142 Ariz. 296, 297-98, 689 P.2d 555, 556-57 (App. 1984) (court may revoke probation for failure to pay restitution after considering probationer's ability to pay). The potential loss of liberty associated with criminal restitution thus entitles a defendant who is unable to afford an attorney to court-appointed counsel. *See* Ariz. R. Crim. P. 6.1(b) (indigent defendant entitled to court-appointed counsel when "criminal proceeding . . . may result in punishment by loss of liberty"); *see also Galaz v. Carruth*, 129 Ariz. 368, 369, 631 P.2d 523, 524 (1981) (constitutional right to counsel when defendant faces loss of liberty). When a defendant is so entitled to the assistance of counsel under the Sixth Amendment, "[a]ctual or constructive denial of th[at] assistance . . . is legally presumed to result in prejudice." *Strickland v. Washington*, 466 U.S. 668, 692 (1984).

¶22 The trial court's actions, however well-intentioned to expedite Guadagni's case, deprived Guadagni of his right to counsel at the restitution hearing. Guadagni had

specifically requested that such a hearing be held and his counsel expressed a clear intent to represent Guadagni at that proceeding. Nonetheless, the court ultimately conducted the hearing without Guadagni's counsel present and entered an award against Guadagni at that time. Even assuming arguendo that Guadagni's absence at that hearing constituted sufficient grounds for the court to conclude that he had knowingly, voluntarily, and intelligently waived his right to personally appear, the state has not suggested, nor does the record support, that Guadagni ever waived his right to have counsel represent him. *See State v. Hampton*, 208 Ariz. 241, ¶ 7, 92 P.3d 871, 873-74 (2004) (defendant's waiver of right to counsel must be knowing, voluntary, and intelligent). And the record before us does not eliminate the possibility that Guadagni's failure to attend may have been motivated in whole, or in part, by his belief that his counsel would appear and act competently on his behalf.

¶23 Moreover, the state offered evidence at Guadagni's restitution hearing supporting a higher award than the victims had sought at the sentencing hearing. By entering its restitution order on the basis of new information that neither the defendant nor his attorney had the opportunity to challenge, the trial court also violated Guadagni's due process right to contest the amount of restitution. *See, e.g., Lewus*, 170 Ariz. at 414, 825 P.2d at 473 (vacating restitution order entered by minute entry, not in open court with defendant present, where counsel had previously addressed only legality of restitution). Accordingly, we conclude the trial court erred when it conducted a restitution hearing in the absence of Guadagni's counsel. Because we presume prejudice when a criminal defendant

14

has been denied the assistance of any counsel in a criminal proceeding, *Strickland*, 466 U.S. at 692, we must vacate the restitution order.

**¶24** We affirm Guadagni's conviction and reject his contention that, as a matter of law, Gail and Sarah are not victims and, therefore, not entitled to receive restitution. But for the reasons stated herein, we vacate the order of restitution and remand this matter to the trial court for further proceedings consistent with this opinion.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Judge


_____
GARYE L. VÁSQUEZ, Judge

15