IN THE
# ARIZONA COURT OF APPEALS
### DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

ADOLFO NOEL RUIZ JR.,
*Appellant*.

No. 2 CA-CR 2013-0116
Filed November 25, 2014

———————————————

Appeal from the Superior Court in Cochise County
No. CR201200006
The Honorable Wallace R. Hoggatt, Judge

**AFFIRMED IN PART;
VACATED AND REMANDED IN PART**

———————————————

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Jonathan Bass, Assistant Attorney General
*Counsel for Appellee*

Joel A. Larson, Cochise County Legal Defender, Bisbee
*Counsel for Appellant*

**OPINION**

Presiding Judge Miller authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Espinosa concurred.

M I L L E R, Presiding Judge:

**¶1**        We previously issued an opinion in this matter. *State v. Ruiz*, 236 Ariz. 15, 335 P.3d 537 (App. 2014). On Adolfo Ruiz's motion for reconsideration and in light of certain points raised concerning that portion of our decision addressing the trial court's restitution order, we grant the motion, vacate our prior opinion, and issue this new opinion in its stead.

**¶2**        Ruiz was convicted after a jury trial of two counts of attempted manslaughter by sudden quarrel or heat of passion, and one count of aggravated assault with a deadly weapon or dangerous instrument. This appeal requires us to determine whether a person commits attempted sudden quarrel or heat of passion manslaughter if death does not occur, the person knew only that his conduct would cause "serious physical injury," and he did not intend for his conduct to cause death. For the following reasons, we affirm Ruiz's aggravated assault conviction and sentence, but vacate his attempted manslaughter convictions and sentences, and remand for further proceedings.

**Factual and Procedural Background**

**¶3**        We view the facts in the light most favorable to sustaining the jury's verdicts. *See State v. Haight-Gyuro*, 218 Ariz. 356, ¶ 2, 186 P.3d 33, 34 (App. 2008). In January 2012, Ruiz was involved in a fist-fight in a bar that began with a shove from M.M. As he was being escorted outside by C.R., he produced a gun and fired two shots that struck C.R. Ruiz was then pushed out of the bar and onto the ground, causing him to drop the gun. Ruiz immediately picked it up and shot M.M. Ruiz testified he was in fear of his life from multiple persons; further, the bullets that struck C.R. and M.M. were either warning shots or inadvertent discharges

caused by struggles with other people as they grappled to get the gun.

¶4        The indictment charged Ruiz with two counts of attempted second-degree murder.  He also was charged with aggravated assault for each of the shots that struck C.R. and M.M. The jury found Ruiz guilty of two counts of the lesser-included offense of attempted manslaughter, and one count of aggravated assault against M.M.[1]  The jury acquitted Ruiz of two counts of aggravated assault against C.R.  He was sentenced to presumptive, consecutive, and concurrent prison terms totaling fifteen years.

## Attempted Manslaughter

¶5        Ruiz does not challenge the sufficiency of the evidence to support his convictions, but argues the trial court improperly instructed the jury.  He contends the court's instruction permitted the jury to find him guilty of attempted manslaughter based only on conduct intended to cause serious physical injury.   Stated differently, he maintains the state was relieved of the burden of proving he had engaged in conduct intended to culminate in death. Because Ruiz raises this argument for the first time on appeal, we review for fundamental, prejudicial error.  *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005).

### Attempted Manslaughter Instruction

¶6        The trial court instructed the jury that if it found Ruiz not guilty of attempted second-degree murder or if it could not reach a verdict on that charge, it could consider whether he had committed attempted manslaughter under A.R.S. § 13-1103(A)(2). The court defined the latter as follows:

---

[1]We presume the jury did not reach a verdict on either count of attempted second-degree murder because it did not return a verdict of acquittal.

> The crime of manslaughter by sudden quarrel or heat of passion requires proof that:
>
> A person intentionally killed another person; or
>
> A person caused the death of another person by conduct which the defendant knew would cause death *or serious physical injury*; and
>
> A person acted upon a sudden quarrel or heat of passion; and the sudden quarrel or heat of passion resulted from adequate provocation by the person who was killed.

(Emphasis added.)

**¶7**        Ruiz relies on *State v. Ontiveros*, 206 Ariz. 539, 81 P.3d 330 (App. 2003), for the proposition that the requisite mens rea for attempt to commit manslaughter under § 13-1103(A)(2) is the intent or belief that one's conduct will cause death. In *Ontiveros*, we held that attempted second-degree murder is not a cognizable offense if the person does not intend or know[2] that his conduct will cause death. *Id.* ¶ 11. We reasoned that a person who does not intend or know that his conduct will cause death cannot be said to have taken action "planned to culminate" in death. *Id.* ¶ 10. Attempted second-degree murder therefore requires either the intention or the knowledge that one's conduct will cause death to the victim. *Id.*

---

[2]In this context, "know" or "knowingly" means "believes." *See* A.R.S. § 13-105(10)(b). Otherwise, the finder of fact would be confronted with the conundrum of whether a person can "know" a fact (*i.e.*, the conduct caused the victim's death) that is false (*i.e.*, the victim did not die).

**¶8**      Ruiz contends the rationale employed in *Ontiveros* should extend to attempted[3] manslaughter, under § 13-1103(A)(2). Subsection (A)(2) of that statute explicitly incorporates the elements of second-degree murder:

> A person commits manslaughter by:
>
> . . . .
>
> Committing second degree murder as defined in § 13-1104, subsection A upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim.

This offense includes a "different circumstance" of sudden quarrel or heat of passion resulting from adequate provocation by the victim. *Peak v. Acuna*, 203 Ariz. 83, ¶ 6, 50 P.3d 833, 834 (2002) (lesser offense of manslaughter by sudden quarrel/heat of passion includes all elements of greater offense of second-degree murder plus different required circumstance). The additional circumstance, however, does not negate the mandatory elements of second-degree murder. Therefore, we conclude the rationale employed in *Ontiveros* applies to attempted manslaughter under § 13-1103(A)(2).

---

[3]The jury instruction for attempt tracked A.R.S. § 13-1001(A), stating:

> A person commits attempt if, acting with the kind of culpability otherwise required for commission of an offense, such person:
>
> Intentionally engages in conduct which would constitute an offense if the attendant circumstances were as such person believes them to be; *or*
>
> Intentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense.

**¶9**          The state does not attempt to distinguish *Ontiveros*. Rather, it observes in a footnote that attempted manslaughter by heat of passion or sudden quarrel is a cognizable offense in Arizona, citing *State v. Barnes*, 162 Ariz. 92, 781 P.2d 69 (App. 1989).  A minor, passing reference without argument generally is insufficient. *See State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (argument not developed on appeal waived).  In our discretion, however, we address the implications of *Barnes*. *See State v. Aleman*, 210 Ariz. 232, ¶ 10, 109 P.3d 571, 575 (App. 2005).

**¶10**          In *Barnes*, the defendant shot the victim at close range with a rifle, yet he survived.  162 Ariz. at 93, 781 P.2d at 70.  Barnes was convicted of attempted manslaughter pursuant to § 13-1103(A)(2). *Id.*  He argued "there is no such crime as attempted heat of passion or sudden quarrel manslaughter," relying on *State v. Adams*, 155 Ariz. 117, 120-21, 745 P.2d 175, 179-80 (App. 1987), in which we held the offenses of attempted reckless manslaughter and attempted negligent homicide are not cognizable offenses in Arizona because one could not attempt to commit a crime that only required reckless conduct or criminal negligence and not a specific intent. *Barnes*, 162 Ariz. at 93, 781 P.2d at 70.  In the alternative, Barnes argued attempted heat of passion or sudden quarrel manslaughter required the jury to be instructed that it must find proof of specific intent to kill, rather than only the intent to shoot the victim. *Id.*  In rejecting both arguments, the court distinguished *Adams* on the basis that, "[w]hat must be 'intentional' is the conduct." *Id.*  The court tersely concluded that evidence of intentional shooting, knowing "the shooting would cause death or serious physical injury," was sufficient. *Id.*

**¶11**          *Barnes* was not addressed by the court in *Ontiveros*, nor has it been cited in any subsequent Arizona opinions.  Several out-of-state cases have cited *Barnes* where there was evidence of intent to kill, but in none of these cases was it cited for the proposition that intent to cause only bodily injury is sufficient to support the offense of attempted manslaughter. *See, e.g.*, *State v. Holbron*, 904 P.2d 912, 923 (Haw. 1995); *State v. Gutierrez*, 172 P.3d 18, 25 (Kan. 2007).  In contrast, *Ontiveros* has been affirmed within Arizona and cited in a national treatise on criminal law. *See State v. Dickinson*, 233 Ariz.

527, ¶ 11, 314 P.3d 1282, 1285 (App. 2013) (attempted second-degree murder requires intent to kill victim or knowledge conduct would cause death); 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.3 (2d ed. 2013) (on charge of attempted murder not sufficient to show defendant intended to do serious bodily harm). To the extent *Barnes* can be read as standing for the proposition that a jury may be instructed that the intent to commit serious physical injury is sufficient proof for attempted manslaughter, the state conceded at oral argument that *Barnes* has been overtaken by recent jurisprudence that more comprehensively addresses the question here. We agree and conclude that the instruction erroneously permitted the jury to consider conduct the defendant may have intended or believed would cause only serious physical injury.

**Fundamental Error Analysis**

**¶12** To establish fundamental error, a defendant must show "that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Henderson*, 210 Ariz. 561, ¶ 24, 115 P.3d at 608. This court has previously determined "that instructing a jury on a non-existent theory of criminal liability is fundamental error." *State v. James*, 231 Ariz. 490, ¶ 13, 297 P.3d 182, 185 (App. 2013); *see also Dickinson*, 233 Ariz. 527, ¶ 12, 314 P.3d at 1285; *Ontiveros*, 206 Ariz. 539, ¶ 17, 81 P.3d at 333. Because the attempted manslaughter instruction misstated the law, it had the potential to "improperly relieve[] the State of its burden of proving an element of the offense." *State v. Kemper*, 229 Ariz. 105, ¶¶ 5-6, 271 P.3d 484, 486 (App. 2011); *see also Ontiveros*, 206 Ariz. 539, ¶ 11, 81 P.3d at 332. Thus, the error complained of was fundamental as it goes to the foundation of the case. *Kemper*, 229 Ariz. 105, ¶¶ 5-6, 271 P.3d at 486; *see also Dickinson*, 233 Ariz. 527, ¶ 12, 314 P.3d at 1286.

**Prejudice**

**¶13** Having determined the error was fundamental, we next examine whether Ruiz has demonstrated he was prejudiced as a result. *See Henderson*, 210 Ariz. 561, ¶ 26, 115 P.3d at 608. "Prejudice is a fact-intensive inquiry, the outcome of which will 'depend[] upon

the type of error that occurred and the facts of a particular case.'" *Dickinson*, 233 Ariz. 527, ¶ 13, 314 P.3d at 1286, *quoting James*, 231 Ariz. 490, ¶ 15, 297 P.3d at 186 (alteration in *Dickinson*). "To prove prejudice, [Ruiz] must show that a reasonable, properly instructed jury 'could have reached a different result.'" *Id.* ¶ 13, *quoting James*, 231 Ariz. 490, ¶ 15, 297 P.3d at 186. As part of this analysis, we consider "the parties' theories, the evidence received at trial and the parties' arguments to the jury." *Id.*

¶14 At trial, the state maintained that Ruiz intended to kill both C.R. and M.M. C.R. testified that as he picked Ruiz up to escort him out of the bar he noticed Ruiz had a gun, "heard flashes," and fell to the ground, whereupon he realized he had been shot twice. M.M. testified that Ruiz picked up the gun, "looked [him] in the eye, and shot [him]," despite the fact that M.M. had raised his open hands. Another witness to the shooting testified that Ruiz did not appear to be aiming at anybody in particular.

¶15 Ruiz admitted at trial that he shot C.R. and M.M., but asserted a justification defense. Ruiz testified that when he had attempted to leave the bar, he had been shoved by M.M., and the confrontation had escalated to blows and wrestling between the pair. As other individuals at the bar joined the fray, Ruiz feared for his life and instinctively drew his weapon, firing a "warning shot" that hit C.R. He testified the gun went off a second time after someone "tr[ied] to pull it out of [his] hand." After being thrown on the floor, Ruiz further explained, his "gun fell out of [his] hand," he and M.M. fought over the gun, and M.M. "tried to pull the gun up out of [Ruiz's] hand," which "caus[ed] the gun to fire."

¶16 The jury is tasked with deciding the facts of the case and, in so doing, must consider what testimony to accept or what to reject. *See Smethers v. Campion*, 210 Ariz. 167, ¶ 19, 108 P.3d 946, 951 (App. 2005) (recognizing standard instruction "[Jury] may accept everything a witness says, or part of it, or none of it"); *see also* State Bar of Arizona, *Revised Arizona Jury Instructions (Criminal)* Std. 18 (2013). Indeed, the jury was instructed that it "may accept everything a witness says, or part of it, or none of it." If portions of testimony from several different witnesses were accepted, it is possible the jury may have concluded Ruiz only intended or knew

that his conduct would harm the victims, rather than kill them. *See Ontiveros*, 206 Ariz. 539, ¶ 18, 81 P.3d at 334. For instance, the disparate verdicts on the aggravated assault charges suggest the jury viewed the testimony differently for each count.

**¶17** The state's closing argument did not alleviate the error in the instruction. The state argued Ruiz had acted unreasonably and told the jury, "[I]f [Ruiz] acted recklessly, your work is done." In its rebuttal closing, the state once again told the jury, "[Y]ou[r] work is done if you find that Adolfo Ruiz was unreasonable, that he was provocative, or that he was reckless. You're finished then if you find any of those things with respect to him." The culpable mental state of "recklessness," however, is less than the intentional conduct required for an attempted manslaughter conviction.[4] *See Adams*, 155 Ariz. at 119-20, 745 P.2d at 177-78 (concluding recklessness does not require any intent to achieve result; there can be no such criminal offense as attempt to achieve unintended result). Thus, the state likely compounded the error in the instruction by arguing to the jury that it could find Ruiz guilty of attempted manslaughter without finding he had intended or knew his actions would cause the death of C.R. and M.M. *See id.* at 120, 745 P.2d at 178 (concluding attempted reckless manslaughter is not cognizable offense in Arizona).

**¶18** Although the record contains sufficient evidence establishing Ruiz had intended or knew his conduct could cause the deaths of C.R. and M.M., Ruiz has shown that the jury could have based its guilty verdict only on a finding that he had intended or knew that his conduct would cause serious physical injury. Moreover, we cannot say beyond a reasonable doubt that the jury would have convicted Ruiz without the erroneous jury instruction. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 173, 800 P.2d 1260, 1281 (1990) (erroneous jury instruction not harmless error if defendant could be

---

[4]The jury was instructed on the definition of "recklessly," which tracked A.R.S. § 13-105(10)(c), and stated in relevant part: "'Recklessly' . . . means that a defendant is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists."

convicted without proof beyond reasonable doubt of requisite culpable mental state). Ruiz's attempted manslaughter convictions therefore cannot stand. *See Ontiveros*, 206 Ariz. 539, ¶¶ 19-20, 81 P.3d at 334.

**Aggravated Assault**

**¶19** Ruiz raises three interrelated arguments involving two justification defense jury instructions as well as the trial court's decision to not further instruct the jury on provocation. Although neither party relates its arguments to Ruiz's lone aggravated assault conviction, the underlying factual predicate for Ruiz's attempted manslaughter convictions is nearly identical to that for Ruiz's aggravated assault conviction. Having already determined Ruiz's attempted manslaughter convictions must be vacated, we therefore address the merits of Ruiz's remaining arguments only as they relate to his aggravated assault conviction.[5]

**Unavailability of Justification Instruction**

**¶20** Ruiz first argues the trial court abused its discretion in instructing the jury pursuant to A.R.S. § 13-401, which bars the use of certain defenses to charged crimes, because it is not a statute upon which jury instructions have been based. The state concedes the court erred in instructing on § 13-401 but contends the error was harmless. We accept the state's concession and therefore review the court's instruction for harmless error. *See State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). An error is harmless if the state can establish beyond a reasonable doubt, "'in light of all of the evidence,'" that the error did not "contribute to or affect the verdict." *State v. Valverde*, 220 Ariz. 582, ¶ 11, 208 P.3d 233, 236 (2009), *quoting Bible*, 179 Ariz. at 588, 858 P.2d at 1191.

**¶21** The trial court instructed the jury on the unavailability of a justification defense with language that tracks § 13-401(A):

---

[5]To the extent Ruiz asserts a justification defense on remand, the substantive issues and their resolution will be applicable.

> Even though a person is justified under this chapter in threatening or using physical force or deadly physical force against another, if in doing so such person recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.

The instruction does not appear in the Revised Arizona Jury Instructions and, as both parties agree, was taken from a statute upon which jury instructions are not based. That is because, as its plain language indicates, § 13-401 is an exception to justification defenses where an innocent third party has been injured or killed due to a defendant's reckless conduct. No jury instruction is necessary if the exception applies.

**¶22**     Here, Ruiz's sole aggravated assault conviction was committed upon M.M., who was involved in the initial altercation with Ruiz that then devolved into the larger fracas. As Ruiz concedes, there was no argument at trial that M.M. was an innocent third person as contemplated by § 13-401. Accordingly, in light of all the evidence, we conclude the § 13-401 jury instruction did not contribute to or affect the aggravated assault verdict. *Valverde*, 220 Ariz. 582, ¶ 11, 208 P.3d at 236. Thus, the error was harmless.

**Decision to Not Further Instruct Jury**

**¶23**     Ruiz next argues the trial court erred when it declined to give the jury additional instruction on the relationship of provocation to self-defense. Because Ruiz did not raise the argument below, we review for fundamental, prejudicial error. *Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607.

**¶24**     During deliberations, the jury sent the trial court a note which read:

> Regarding self-defense, if the defendant has justification in his mind and under the

law to use the physical force, is it still
considered not justified if the defendant
provoked the other's use of physical force
against the defendant? Is the defendant
provoking this problem if he was provoked
by others first?

After a brief discussion, the court and the parties agreed to refer the
jury back to the instructions already given.

¶25 The trial court in its discretion may decide whether to
further instruct the jury on a matter. *See State v. Stevens*, 184 Ariz.
411, 413, 909 P.2d 478, 480 (App. 1995). Thus, an adequate
instruction permits the court to decline further instructions, instead
referring the jury back to the instructions. *See State v. Ramirez*, 178
Ariz. 116, 126, 871 P.2d 237, 247 (1994). The justification instruction
here correctly stated the law regarding provocation. Accordingly,
we cannot say the court abused its discretion in referring the jury
back to it. *See id.* at 126-27, 871 P.2d at 247-48; *Stevens*, 184 Ariz. at
413, 909 P.2d at 480.

**Defense Justification Jury Instruction**

¶26 Lastly, Ruiz argues the trial court omitted the word
"safely" when instructing pursuant to A.R.S. § 13-404(B)(3)(a).
Because Ruiz again failed to object to the instruction below, we
review for fundamental, prejudicial error. *Henderson*, 210 Ariz. 561,
¶¶ 19-20, 115 P.3d at 607.

¶27 The basic justification defense statute, § 13-404, contains
subsection B, which sets forth when the threat or use of physical
force against another is not justified. Subsection 3 provides that the
defense is unavailable:

If the person provoked the other's use or
attempted use of unlawful physical force,
unless:

(a) The person withdraws from the
encounter or clearly communicates to the
other his intent to do so reasonably

believing he cannot *safely* withdraw from
the encounter; and

(b) The other nevertheless continues or
attempts to use unlawful physical force
against the person.

(Emphasis added). Ruiz contends that the omission of "safely" is
fundamental error because it lessened the state's burden to prove
the absence of justification.

¶28 Assuming the omission of the word "safely" was
fundamental error, Ruiz has failed to demonstrate that he was
prejudiced as a result. At trial, no witness testified that Ruiz either
attempted to withdraw from the encounter or that he communicated
an intent to withdraw, believing he could do so safely. *See* A.R.S.
§ 13-404(B)(3). Nor did either party suggest during closing
arguments that the jury needed to consider whether Ruiz withdrew
from the scene or that he communicated his intent to do so. Upon
examination of the record, we do not conclude that a reasonable
jury, properly instructed would have reached a different verdict.
Accordingly, Ruiz has not established the omission of the word
"safely" from the justification defense instruction prejudiced him.

**Restitution Order**

¶29 Ruiz argues, and the state concedes, that the trial court
erred by holding the restitution hearing without Ruiz or his counsel
present. The hearing had been set for approximately two months
after Ruiz was sentenced but neither he nor his counsel appeared.[6]
Despite Ruiz's absence, the court saw no reason to delay the hearing

---

[6]The restitution hearing was set at sentencing, the date and
time of which were noticed in the sentencing minute entry. Ruiz's
counsel was also notified at sentencing that he would need to
prepare a writ to transfer Ruiz from the Department of Corrections
to the hearing. For unexplained reasons, Ruiz's counsel was out of
the state at the time set for the restitution hearing, and no writ was
prepared to allow for Ruiz's presence.

and ordered that Ruiz pay medical expenses to M.M., C.R., and the victims' insurance companies.

¶30         The right to counsel in criminal proceedings is guaranteed by the Sixth Amendment to the United States Constitution and by article II, § 24 of the Arizona Constitution. *State v. Taylor*, 216 Ariz. 327, ¶ 13, 166 P.3d 118, 122 (App. 2007). Restitution hearings are part of the sentencing process, and defendants have the right to be represented by counsel during these proceedings. *State v. Guadagni*, 218 Ariz. 1, ¶ 21, 178 P.3d 473, 479 (App. 2008). Moreover, our supreme court has held that a defendant must be present at the time of sentencing except in extraordinary circumstances. *See State v. Fettis*, 136 Ariz. 58, 59, 664 P.2d 208, 209 (1983).

¶31         By holding the restitution hearing in the absence of Ruiz and counsel, the trial court deprived Ruiz of his right to counsel at that hearing. *See Guadagni*, 218 Ariz. 1, ¶ 22, 178 P.3d at 479. Nothing in the record supports a conclusion that Ruiz had knowingly, voluntarily, and intelligently waived his right to personally appear, nor does it establish he waived his right to have counsel represent him at any point. *See id.* Accordingly, we conclude the court erred when it conducted the hearing in their absence. Moreover, we presume prejudice when a defendant has been denied the assistance of counsel in a criminal proceeding, *Strickland v. Washington*, 466 U.S. 668, 692 (1984); therefore, we must vacate the restitution order. *See Guadagni*, 218 Ariz. 1, ¶ 23, 178 P.3d at 479.

## Disposition

¶32         For the reasons stated above, we affirm Ruiz's conviction and sentence for aggravated assault, count three. We otherwise vacate Ruiz's convictions and sentences for attempted manslaughter, counts four and five, and remand this matter to the trial court for a new trial on these counts. We also vacate the restitution order and remand for another restitution hearing

pertaining to the aggravated assault conviction involving victim M.M.[7]

---

[7]Because we have vacated the sole conviction against victim C.R., the restitution order as to C.R. is moot. *See State v. Prince*, 206 Ariz. 24, ¶ 4, 75 P.3d 114, 116 (2003) (where defendant will be resentenced, "all other sentencing issues he asserts are moot").