NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

VICTORIA ANN LISTER, *Appellant.*

No. 1 CA-CR 17-0394
FILED 5-8-2018

---

Appeal from the Superior Court in Maricopa County
No.  CR 2016-005283-002
The Honorable Justin Beresky, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mark E. Dwyer
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Paul J. McMurdie joined.

_____

**C A M P B E L L**, Judge:

¶1        Appellant Victoria Ann Lister appeals her conviction and sentence for hindering prosecution in the first degree, a class 3 felony. Lister argues the court committed fundamental error by failing to answer a purely legal question asked by the jury during deliberations. Because we find no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In the evening of May 9, 2016, the body of an adult male was found on the side of the road in Pinal County. Upon arrival, law enforcement determined the victim had been murdered. Two suspects were identified shortly thereafter, one of which was Chad Jenkins. A press release was provided to various media outlets asking for the public's help in the apprehension of the suspects. The Pinal County Sheriff's Office received information that Jenkins may have been hiding at the home of Sierra Fessler, his girlfriend. Two days after the murder, Jenkins was located and arrested at Fessler's residence.

¶3        Detective Shawn Wilson interviewed Fessler and learned that Jenkins had stayed at the home of Lister on the night after the murder. Detective Wilson went to the home of Lister and conducted an interview. Lister stated she "didn't know why" the police would be at her home.

¶4        Detective Wilson then asked Lister about the location of a cell phone that was relevant to the murder investigation. Lister denied having any knowledge of the phone. The Detective then put Fessler on the phone with Lister. Fessler told Lister that the cell phone was in Lister's bedroom. At that point, Lister retrieved the phone and admitted to Detective Wilson that both Fessler and Jenkins had been at her home on May 10. She admitted that she spoke to Jenkins about "how the murder occurred" and other details about that night.

¶5        After leaving Lister's home, Detective Wilson discovered the SIM card was missing from the cell phone. Roughly an hour later, Lister

called Detective Wilson and told him she found the phone's SIM card. When Detective Wilson tried to access the data on the SIM card, he discovered that it had been wiped and contained no retrievable information.

¶6          Lister was indicted on one count of hindering prosecution in the first degree, a class 3 felony, under Arizona Revised Statutes ("A.R.S.") sections 13-2510 and 13-2512. The State subsequently filed a motion to amend the indictment, clarifying that Lister was charged under subsections 1 and 3 of A.R.S. § 13-2510. Lister did not object and the trial court granted the motion to amend the indictment.

¶7          At trial, Lister testified that Jenkins "just showed up" at her home around 2:00 p.m. on the day after the murder. She explained she had been friends with Jenkins for about four years and it was not unusual for him to stay overnight at her home. Later the same evening, Jenkins' girlfriend Fessler showed up and also stayed overnight at Lister's residence. The next morning, Fessler went to work while Jenkins and Lister remained in the house. At some point during the day, Jenkins told Lister what had happened and that he needed to turn himself in to the police. When Fessler returned from work, she and Lister both spoke to Jenkins and "he agreed that he was going to turn himself in." The couple left the house together and Lister went with her mother to Prescott. When she returned home, she saw a report on the news about Jenkins and the murder. That night the detectives knocked on her door at about 2:00 a.m. to question her about Jenkins and the murder.

¶8          After the close of evidence, the court instructed the jury on the crime of hindering prosecution. Specifically, the court instructed that the crime of hindering prosecution in the first degree requires proof that the defendant:

1. Intended to hinder the apprehension, prosecution, conviction, or punishment of another for any felony; and

2. Knew or had reason to know that the felony involved murder; and

3. Knowingly rendered assistance to the other person.

The court further defined "[r]ender[ing] assistance to another person," stating:

A person renders assistance to another person by knowingly:

1. Harboring or concealing the other person; or

2. Providing the other person with money, transportation, a weapon, a disguise or other similar means of avoiding discovery, apprehension, prosecution or conviction.

**¶9**        During deliberations, the jury sent a written question to the judge, asking the court:

We would like clarification on "Rendered assistance to another person" Pg. 8 "harboring or concealing the other person." [I]s this a stand alone statement or in reference to avoiding [d]iscovery, apprehension, prosecution or conviction[?]

Without objection from defense counsel, the trial court answered:

Rely on the instructions as given. As you determine the facts, you may find that some instructions no longer apply. You must then consider the instructions that do apply, together with the facts as you have determined them.

**¶10**        The jury later returned a verdict of guilty and Lister was sentenced to two years of supervised probation.

## DISCUSSION

**¶11**        Lister argues the superior court committed fundamental error by failing to answer a purely legal question and permitting her case to be decided by a jury with a faulty understanding of the charged offense. We disagree.

**¶12**        When the defendant fails to object to an alleged error by the trial court, we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). The defendant further bears the burden of establishing both that fundamental error occurred and the error caused him prejudice. *Id.* at 568, ¶ 22. The defendant must first prove that error occurred, and second, that the error was fundamental. *Id.* at ¶¶ 23-24. An error is fundamental if: (1) the "error complained of goes to the foundation" of the case; (2) the error "takes away a right that is essential to his defense"; and (3) the error is of "such magnitude that he could not have received a fair trial." *Id.* at 568, ¶ 24; *see also State v. King*, 158 Ariz. 419, 424 (1988). Finally, if the defendant shows that a fundamental error occurred, he must then

demonstrate that the error caused him prejudice. *Henderson*, 210 Ariz. at 568, ¶ 26.

¶13            Here, the trial court was not required to provide a clarifying instruction. When a deliberating jury is confused about a legal issue and "the resolution of the question is not apparent from an earlier instruction, the trial judge has a responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria." *State v. Ramirez*, 178 Ariz. 116, 126 (1994). Such guidance, however, and the decision to give further instruction, is within the trial court's discretion. *Id.*; *see also State v. Ruiz*, 236 Ariz. 317, 324, ¶ 25 (2014). Hence, when a jury questions a matter on which it has already received adequate instruction, the trial court may, in its discretion, "refuse to answer, or may refer the jury to the earlier instruction." *Ramirez*, 178 Ariz. at 126 (citation omitted).

¶14            Here, the court properly instructed the jury on the issue of "render[ed] assistance to another person." *See supra* ¶ 8. The instruction repeated verbatim the statutory definitions of "render[ing] assistance." *See* A.R.S. § 13-2510. Lister contends that the jury confused the two methods of rendering assistance and how to apply the statute because they asked whether the methods for rendering assistance were "stand alone" or connected. The court had the discretion to either instruct the jury to refer back to the instruction or refuse to answer altogether. *Ramirez*, 178 Ariz. at 126. The court was therefore justified in instructing the jury to refer back to the instruction. *Id.*

¶15            Additionally, the court asked the defense whether it would prefer to "send back the answer that says, '[r]ely on the instructions that you have,'" or to provide further argument regarding the instruction. The defense responded, "I would ask just to send it back."

¶16            Furthermore, hindering prosecution is an "alternative means" statute, as Lister acknowledges. Alternative means statutes "identify a single crime and provide more than one means of committing the crime." *State v. West*, 238 Ariz. 482, 489, ¶ 19 (App. 2015) (citation omitted). Here, the State relied exclusively on the method of "[h]arboring or concealing the other person" to meet the requirements of the statute. This is evidenced in the State's closing argument: "[W]e're actually done the minute she lets a known, wanted murderer stay at her house, period. Full stop. That is a crime under the law." *See* A.R.S. § 13-2510(1). Given that the statute is an "alternative means" statute, the State could have proven any one of the six methods provided to substantiate the rendering of assistance requirement. *See* A.R.S. § 13-2510; *see also State v. Garcia*, 235 Ariz. 627, 630,

¶ 8 (App. 2014) (explaining that the subsections in such a statute do not refer to separate crimes but rather describe different ways of committing the same single offense). Accordingly, the State simply had to prove she had rendered assistance to Jenkins by *either* knowingly "harboring" Jenkins *or* "providing . . . means of avoiding . . . apprehension." *See* A.R.S. § 13-2510.

¶17  Here, the State only argued that Lister committed hindering prosecution by harboring Jenkins after he admitted he murdered the victim. Because the trial court did not err by not issuing a clarifying instruction, we need not continue the analysis of whether the alleged error was fundamental and prejudicial.[1]

## CONCLUSION

¶18  For the foregoing reasons, we affirm Lister's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[1] Further, because no error occurred, we need not address the State's argument that the alleged error was invited error.